**David Javier TRILLO, Appellant,**

v.

**The STATE of Texas, Appellee.**

No. 04–02–00358–CR.

Court of Appeals of Texas, San Antonio.

April 13, 2005.

George Scharmen, Kimberly S. Keller, The Keller Group, San Antonio, for appellant.

Scott Roberts, Asst. Criminal Dist. Atty., San Antonio, for appellee.

Sitting: ALMA L. LÓPEZ, Chief Justice, CATHERINE STONE, Justice, SARAH B. DUNCAN, Justice.

## OPINION

Opinion by ALMA L. LÓPEZ, Chief Justice.

This appeal is on remand from the Texas Court of Criminal Appeals. On original submission, we held that the trial court committed reversible error in admitting the results of a breath test in the absence of retrograde extrapolation, citing this court's opinion in *Stewart v. State*, 103 S.W.3d 483 (Tex.App.-San Antonio 2003), *rev'd*, 129 S.W.3d 93 (Tex.Crim.App.2004). After reversing this court's opinion in *Stewart*, the Texas Court of Criminal Appeals vacated our judgment in the instant appeal and remanded the cause to this court for reconsideration in light of its opinion in *Stewart. Trillo v. State*, No. 633–03, 2004 WL 3093235 (Tex.Crim.App. Apr. 21, 2004).

On remand, David Javier Trillo elected to rely on his original brief and presents eight issues on appeal, contending: (1) the trial court erred in denying his motion for instructed verdict and his objection to the jury charge because the evidence was legally insufficient to prove that his blood alcohol concentration at the time he was driving was .08; (2) the trial court erred in admitting the intoxilyzer test results in the absence of admissible extrapolation evidence under either Rule 401 or Rule 403; (3) the trial court erred in denying Trillo's challenge for cause to two veniremembers; (4) the trial court erred in refusing to quash the jury panel; and (5) the intoxilyzer test results should have been excluded because the evidence failed to demonstrate that the scientific principles underlying the operation of the intoxilyzer were properly applied. We affirm the trial court's judgment.

### BACKGROUND

Officer John Saenz pulled Trillo over for speeding. As soon as Officer Saenz activated his overhead lights, Trillo activated his turn signal to take the next exit. Trillo disregarded a stop sign, turned right, and stopped. Two of Trillo's friends were in the car. Officer Saenz noticed that Trillo's eyes were watery and bloodshot. Trillo told the officer that he had consumed alcoholic beverages. Officer Saenz also smelled the odor of alcoholic beverages on

Trillo's breath. Trillo was cooperative, and his speech was fair.

Officer Saenz testified regarding his experience in field sobriety tests and stated that Trillo failed the horizontal gaze nystagmus test, the walk and turn test, and the one-leg stand test. Officer Saenz also administered the Romberg balance test, which is not a validated field test. Officer Saenz uses the Romberg balance test to measure the individual's perception of time and the amount of sway in the individual's stance with the individual's eyes closed and head tilted back. Officer Saenz observed approximately two inches in sway. Officer Saenz administered the test for thirty seconds, and Trillo estimated that the test took twenty-seven seconds. Officer Saenz admitted that Trillo's time estimation was good. After arresting Trillo, Officer Saenz observed an open alcoholic beverage in the car. Officer Saenz released the passengers in the car.

The jury was shown a videotape of the stop, and Officer Saenz testified that it was approximately one hour from the time of the arrest to the time the breath test was administered. Officer Saenz testified that he was certified to administer the intoxilyzer test and observed Trillo for the requisite period of time prior to administering the test.

On cross-examination, Officer Saenz admitted that the wind was blowing about 15 to 20 miles per hour while Trillo was performing the field sobriety tests. Officer Saenz testified that the manner in which Trillo was driving was not a factor in his arrest. Officer Saenz arrested Trillo based on his performance on the field sobriety tests.

The breath test technical supervisor for Bexar County, George Allen McDougall, Jr., testified that he maintains the intoxilyzer machines and supervises the breath test operators in Bexar County. McDougall testified that the two laws underlying the operation of the intoxilyzer are Henry's Law[1] and the Beer–Lambert Law[2] and explained each of the laws. McDougall stated that the laws were considered valid in the scientific community. McDougall testified that the machine was operating correctly on the night Trillo was tested. Trillo's first test at 12:02 a.m. was 0.133, and his second test at 12:06 a.m. was 0.130. McDougall testified that the difference in results is not an accurate indication as to whether the blood alcohol content is rising or falling because the sample differs, and the difference in results can easily be caused by differences in sample size not time.

Michael Cobarrubias was with Trillo the night he was arrested. Cobarrubias testified that Trillo was not intoxicated that night and still had the normal use of his mental and physical faculties. Cobarrubias stated that he would not have ridden as a passenger in Trillo's car if Trillo had been intoxicated.

### SUFFICIENCY OF THE EVIDENCE

■ In his first and second issues, Trillo contends that the trial court erred in overruling his motion for directed verdict and his objection to the jury charge because the evidence was legally insufficient to support a finding that Trillo's blood alcohol concentration at the time he was driving was 0.08.

1. McDougall explained that Henry's Law relates the alcohol in breath to the alcohol in blood.

2. McDougall explained that the Beer–Lambert Law provides that the amount of decrease in the light detected by the intoxilyzer is proportional to the number of interfering molecules created by the alcohol.

A challenge to the denial of a motion for instructed verdict is in fact a challenge to the legal sufficiency of the evidence. *Cook v. State*, 858 S.W.2d 467, 470 (Tex.Crim.App.1993); *Prescott v. State*, 123 S.W.3d 506, 510 (Tex.App.-San Antonio 2003, no pet.). In reviewing legal sufficiency challenges, we view the evidence in the light most favorable to the verdict and ask whether any rational trier of fact could have found beyond a reasonable doubt all of the elements of the offense. *Santellan v. State*, 939 S.W.2d 155, 160 (Tex.Crim. App.1997); *Prescott*, 123 S.W.3d at 510.

In *Stewart v. State*, 129 S.W.3d 93, 96 (Tex.Crim.App.2004), the court recognized that breath test results might not be conclusive proof that a defendant was intoxicated at the time she was driving; however, the court concluded that evidence of breath test results, coupled with the arresting officer's testimony of his observations and the videotape recording of the stop, were probative evidence of the defendant's intoxication. *Id.* Similarly, in this case, the test results, coupled with the testimony of Officer Saenz and the videotape of the stop, were legally sufficient evidence to support Trillo's conviction.

Trillo's first and second issues are overruled.

### Admissibility of Intoxilyzer Test Results

In his third issue, Trillo contends that the trial court erred in admitting the intoxilyzer test results into evidence in the absence of retrograde extrapolation evidence. Trillo contends that the results were irrelevant under Rule 401 and overly prejudicial under Rule 403.

A trial court's ruling on the admissibility of evidence is reviewed under an abuse of discretion standard. *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex.Crim.App. 1990). The test for whether a trial court abused its discretion is whether the action was arbitrary or unreasonable. *State v. Mechler*, 153 S.W.3d 435, 439–40 (Tex. Crim.App.2005). An appellate court should not reverse a trial judge whose ruling was within the zone of reasonable disagreement. *Id.*

In *Stewart*, the Texas Court of Criminal Appeals held that the results of breath tests are relevant without retrograde extrapolation evidence. Accordingly, Trillo's complaint under Rule 401 is overruled.

In *Mechler*, the Texas Court of Criminal Appeals analyzed the admissibility of intoxilyzer test results in the absence of retrograde extrapolation in response to a Rule 403 challenge. Under Rule 403, all relevant evidence is admissible unless "its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence." Tex.R. Evid. 403. In *Mechler*, the court instructed us that, "A proper Rule 403 analysis includes, but is not limited to, four factors: (1) the probative value of the evidence; (2) the potential to impress the jury in some irrational yet indelible way; (3) the time needed to develop the evidence; and (4) the proponent's need for the evidence." 153 S.W.3d at 439.

#### Probative Value

"The first factor looks to the evidence's probativeness or how compellingly the evidence serves to make a fact of consequence more or less probable." *Id.* "The relative probative value of the test depends primarily on two variables: 1) the degree to which the test result exceeds the legal limit of 0.08%; and 2) the amount of time elapsed between driving and the taking of the test." *Id.* at 449 (Cochran, J., concurring). "The higher the test result and the shorter the time between driving and testing, the more likely the logical

inference is that the defendant had a BAC level at or above 0.08% at the time of driving." *Id.*

In this case, the tests were administered approximately one hour after the stop. Trillo's first test at 12:02 a.m. was 0.133 BAC, and his second test at 12:06 a.m. was 0.130 BAC. These test results "indicate that [Trillo] had consumed alcohol. As a result, they tend to make it more probable that he was intoxicated at the time of driving under both the per se and impairment definitions of intoxication." *Id.* at 440.

### Irrational Impression

■ "The second factor asks whether the evidence has the potential to impress the jury in some irrational but indelible way." *Id.* "Rule 403 does not exclude all prejudicial evidence. It focuses only on the danger of 'unfair prejudice.'" *Id.* "Unfair prejudice" only occurs if relevant evidence tends to tempt a jury into a finding of guilt on grounds other than proof of the charged offense. *Id.* Although the intoxilyzer test results are prejudicial to Trillo, "they are not unfairly prejudicial because [they relate] directly to the charged offense." *Id.*

### Time to Develop

■ "The third factor looks to the time the proponent will need to develop the evidence, during which the jury will be distracted from consideration of the indicted offense." *Id.* "Because the intoxilyzer results relate directly to the charged offense, a jury could not be distracted away from the charged offense regardless of the required time to present the results." *Id.*

### Need for the Evidence

■ "The fourth factor focuses on the proponent's need for the evidence." *Id.* at 441. This last factor encompasses the issues of whether the proponent has other evidence establishing the fact sought to be established by the evidence. *Id.* "The conduct prescribed by the Penal Code is the act of driving while in a state of intoxication." *Bagheri v. State,* 119 S.W.3d 755, 762 (Tex.Crim.App.2003). In this case, the record included Officer Saenz's testimony and the videotape of the stop. "In light of this other evidence probative of [Trillo's] intoxication, the State does not have a great need for the test results." *Mechler,* 153 S.W.3d at 441–42.

### Evaluation

After evaluating all of the relevant factors, we hold that the trial court did not abuse its discretion in admitting the intoxilyzer test results. Trillo's third issue is overruled.

### CHALLENGES FOR CAUSE

In his fourth and fifth issues, Trillo contends that the trial court erred in denying his challenge for cause to veniremember number nine and veniremember number nineteen. Trillo asserts that his challenges should have been granted because both veniremembers responded affirmatively to the question of whether they could determine on the basis of a failed breath test taken an hour or so after a person was driving that the individual had an alcohol concentration of .08 or greater while the person was driving.

■ The denial of a challenge for cause is reviewed under an abuse of discretion standard. *Swearingen v. State,* 101 S.W.3d 89, 98 (Tex.Crim.App.2003). The test for whether a trial court abused its discretion is whether the action was arbitrary or unreasonable. *Mechler,* 153 S.W.3d at 439–40. An appellate court should not reverse a trial judge whose ruling was within the zone of reasonable disagreement. *Id.*

A prospective juror who has a bias or prejudice against any phase of the law upon which a party is entitled to rely is properly challengeable for cause. *Threadgill v. State,* 146 S.W.3d 654, 667 (Tex.Crim.App.2004). The test is whether the bias or prejudice would substantially impair the prospective juror's ability to carry out his oath and instructions in accordance with the law. *Id.* Before a prospective juror can be excused for cause on this basis, however, the law must be explained to him and he must be asked whether he can follow that law regardless of his personal views. *Id.* Great deference is given to the trial court's decision because the trial judge was present to observe the demeanor of the prospective juror and to listen to his tone of voice. *Id.* Particular deference is given when the potential juror's answers are vacillating, unclear or contradictory. *Id.*

Before addressing whether either of the prospective jurors in this case were properly challengeable for cause, we must first determine what the applicable law is. We believe the law continues to be the law announced in *Forte v. State,* 707 S.W.2d 89 (Tex.Crim.App.1986). In that case, the court concluded:

> To prove the element of intoxication in a prosecution for the offense of driving while intoxicated, the State must offer proof beyond a reasonable doubt as to that element. To be sure, if the State relies upon the 0.10% definition of intoxication,[3] then such proof will normally appear in the form of a chemical test showing the alcohol concentration in a defendant's body *near the time of the offense.* However, a conviction will not necessarily follow from the offer of such a test. First, the trier of fact must still

> be convinced beyond a reasonable doubt that the chemical test provides trustworthy evidence of alcohol concentration in a defendant's breath, blood or urine. Second, the jury must still be convinced beyond a reasonable doubt that an inference can be made from the results of the chemical test that the defendant had a 0.10% alcohol concentration in his body *at the time of the offense.*

707 S.W.2d at 94–95 (emphasis in original); *see also Bagheri v. State,* 119 S.W.3d 755, 760 (Tex.Crim.App.2003) (quoting same language from *Forte* ). The following comments by Judge Cochran in her concurring opinion in *Mechler* also appear to recognize a jury's ability to draw inferences from the test results:

> In turn, the relative probative value of the test depends primarily upon two variables: 1) the degree to which the test result exceeds the legal limit of 0.08%; and 2) the amount of time elapsed between driving and the taking of the test. The higher the test result and the shorter the time between driving and testing, *the more likely the logical inference* is that the defendant had a BAC level at or about 0.08% at the time of driving. *The stronger the inference of a BAC of 0.08% or greater at the time of driving,* the less significant is the necessity for expert retrograde extrapolation testimony. Conversely, the weaker *the inference of guilt,* the more vital is the necessity for evidence that relates an accused's BAC test result back to the time of driving. When a test result is obtained long after the arrest and the result is at or below the legal limit, *the logical inference that the person had a 0.08% BAC at*

---

**3.** At the time *Forte* was written, a blood alcohol concentration of 0.10% or greater was required to establish the per se theory of driving while intoxicated; however, the stat-

ute was subsequently amended to decrease the required blood alcohol concentration to 0.08% or greater.

*the time of driving may be so tenuous* that a trial judge appropriately exercises his discretion by excluding the specific test results under Rule 403 absent expert testimony that extrapolates the test result back to the time of driving. *Mechler,* 153 S.W.3d at 449 (Cochran, J., concurring) (emphasis added). Accordingly, the applicable law as pronounced by the Texas Court of Criminal Appeals permits a juror to draw an inference of an alcohol concentration of 0.08% or greater at the time of driving if the jury is convinced beyond a reasonable doubt that such an inference can be made.

██ In this case, Trillo contends that the potential jurors expressed bias against the law in responding affirmatively to the following question, "Do you believe based on what you know that you can determine the alcohol concentration of an individual at an earlier point in time based solely upon a failed breathe [sic] test an hour or so earlier? In other words, that he was .08 or greater while driving based solely upon a failed breathe [sic] an hour later. Do you believe you can do that."

██ In regard to veniremember nine, defense counsel restated the question, and the veniremember responded as follows:

MR. SCHARMEN: Okay. And Ms. Cadena, I'm asking you the same question. Do you believe based upon what you know, that you can determine on the basis of a failed breathe [sic] test taken an hour or so after a person was driving that that individual had an alcohol concentration of .08 or greater while they were driving?

VENIRE PERSON [9]: I mean, he was intoxicated. I—I guess, I could.

MR. SCHARMEN: You—you could?

VENIRE PERSON: I believe I could.

With regard to veniremember nineteen, the following dialogue occurred:

MR. SCHARMEN: Okay. And then finally Ms. Kasper?

VENIRE PERSON: I would think that he would.

MR. SCHARMEN: Be [.]08 or greater?

VENIRE PERSON: Right.

MR. SCHARMEN: And you think that you can make that determination?

VENIRE PERSON: Yes.

In response to this line of questioning, the State posed the following follow-up question:

MR. BRAVENEC: All right. And I'm sorry to have to do it in this fashion, but believe it or not it makes it a little faster. My question to you, and let me take the Altoid from my mouth, is the law requires that someone be .08 or greater at the time of driving.

Now, you can use whatever evidence you're given. Whether it's a blood test or not, to determine it, but it does require that you believe beyond a reasonable doubt if that's the theory we're [sic] relied upon, that it will be .08 or greater.

So, you know, you may be given instructions by the Court that say you can consider a breathe [sic] test as evidence of that and you're welcomed [sic] to use that as evidence, but you have to know that it's a .08 or greater at the time of trial [sic]. So, you can use that as evidence, but you just have to be convinced of that at the time of trial [sic]. That's the theory. I know it's legal mumble jumble.

Let me just ask you, Mr. Genco, would you be able to look at the evidence and determine whether it's .08 or greater at the time of driving?

\* \* \* \* \* \*

MR. BRAVENEC: Same question to you, Ms. Cadena. Am I saying that correctly?

VENIRE PERSON: That's correct.

MR. BRAVENEC: You can use whatever evidence you want, but at the time of

driving, if you thought it was .08 or greater, whether it's [sic] was from anything, a breathe [sic] test or whatever, later on or earlier on or you thought it was .08 or greater at driving, would you be able to follow the law and make it a .08 or greater?

VENIRE PERSON: Yes.

\*     \*     \*     \*     \*     \*

MR. BRAVENEC: Ms. Mendez, would you be able to follow the law, .08 or greater?

VENIRE PERSON: Yes, I guess.

MR. BRAVENEC: All right. And at the time of driving, right?

VENIRE PERSON: Yeah.

MR. BRAVENEC: And Ms. Kasper?

VENIRE PERSON: Yes, I would.

The State's follow-up question was sufficient to rehabilitate the potential jurors to the extent their initial responses can be considered to be statements contrary to the applicable law. Moreover, the jurors were never asked if they would draw an inference to a BAC level at the time of driving even if they were not convinced beyond a reasonable doubt that the inference could be made. Although allowing the jury to draw such an inference seems inconsistent with the holding in *Mata v. State*[4] that excludes expert testimony regarding retrograde extrapolation without proof of scientific reliability, the Texas Court of Criminal Appeals' decision in *Forte*, which was recognized in *Bagheri*, and Judge Cochran's concurring opinion in *Mechler*, require us to conclude that a jury is permitted to make such an inference if it is convinced beyond a reasonable doubt that the inference can be made. *Forte*, 707 S.W.2d at 94–95. Trillo's fourth and fifth issues are overruled.

4. 46 S.W.3d 902 (Tex.Crim.App.2001).

## MOTION TO QUASH

In his sixth and seventh issues, Trillo contends that the trial court erred in denying his motion to quash the jury panel after the trial court instructed the panel that they could draw reasonable inferences from the intoxilyzer test results.

The denial of a motion to quash is reviewed under an abuse of discretion standard. *Thomas v. State*, 621 S.W.2d 158, 163 (Tex.Crim.App. [Panel Op.] 1980). The test for whether a trial court abused its discretion is whether the action was arbitrary or unreasonable. *Mechler*, 153 S.W.3d at 439–40. An appellate court should not reverse a trial judge whose ruling was within the zone of reasonable disagreement. *Id.*

Initially, the trial court engaged in the following discourse with defense counsel during a bench conference:

MR. SCHARMEN: Judge, I'm saying they may not infer that it's .08 or greater if it's [not] scientifically reliable to do so.

THE COURT: I think they can infer.

MR. SCHARMEN: Is the Court ruling that the jury may extrapolate if an expert cannot?

THE COURT: I'm saying that they can infer.

MR. SCHARMEN: They can infer that a person is .08 or greater on a breathe [sic] test alone?

THE COURT: Yes.

Later, in the jury's presence, the following exchange occurred:

MR. SCHARMEN: That jurors may infer or extrapolate when the Court has ruled that it's unreliable. Is that what this Court is saying? Is that what the Court has sustained?

THE COURT: I'm saying that the jurors can infer from an alcohol test, the breathalyzer, they can infer that they were intoxicated. They can consider that as a fact they were intoxicated at the time of their arrest.

MR. SCHARMEN: Okay. I'm not talking about that. I'm talking about alcohol concentration, Judge, not whether the person was intoxicated.

THE COURT: That is one factor that they can infer in and they can consider.

MR. SCHARMEN: Okay. Now, I'm talking about alcohol concentration in the blood. That's what this lady was talking about, Judge. Not about intoxication, but about alcohol concentration in the blood.

THE COURT: Okay. I already stated what I think the law infers and requires, so and I've ruled on the objection of the State. Let's move on.

Finally, during defense counsel's presentation of his motion to quash outside of the jury's presence, the following exchange occurs:

MR. SCHARMEN: Okay. And our motion is that we quash this panel or instruct them that they may not infer a breathe [sic] alcohol concentration in an earlier point in time based upon a breathe [sic] test alone because that is no evidence.

THE COURT: I disagree with that. I disagree with that.

The statements made by the court regarding the law are not so inconsistent with the law as stated in *Forte* that the denial of the motion to quash was outside the zone of reasonable disagreement. The trial court's comments indicated that the jury could draw an inference of intoxication and, possibly, an inference of an alcohol concentration at the time of driving from test results based on the totality of the circumstances. Although the trial court did not verbally instruct the jury that it could only make such an inference if it was "convinced beyond a reasonable doubt that such an inference can be made," *Forte*, 707 S.W.2d at 95, the jury charge instructed the jury that the prosecution had the burden of proving each and every element of the offense charged beyond a reasonable doubt. In view of the totality of the circumstances and instructions given to the jury, the trial court did not abuse its discretion in denying the motion to quash because it did not instruct the jury contrary to the applicable law. Trillo's sixth and seventh issues are overruled.

### SCIENTIFIC RELIABILITY OF INTOXILYZER TEST RESULTS

■■■ In his final issue on appeal, Trillo contends that the trial court erred in admitting the intoxilyzer tests results because the State failed to demonstrate by clear and convincing evidence that the scientific principles underlying the operation of the intoxilyzer machine were properly applied. Specifically, Trillo contends that because Officer Saenz failed to measure Trillo's body temperature, breath temperature, and lung capacity before taking the breath specimen, he contaminated the reliability of Trillo's test.

A trial court's ruling on the admissibility of evidence is reviewed under an abuse of discretion standard. *Montgomery*, 810 S.W.2d at 391. The test for whether a trial court abused its discretion is whether the action was arbitrary or unreasonable. *Mechler*, 153 S.W.3d at 439–40. An appellate court should not reverse a trial judge whose ruling was within the zone of reasonable disagreement. *Id.*

McDougall testified at length regarding the scientific theory underlying the test results, i.e., Henry's Law. In addition, Officer Saenz testified regarding the procedures followed in implementing the test. Although McDougall acknowledged that

temperature can affect breath testing accuracy, such testimony goes to the weight to be given the evidence, not its admissibility.

## CONCLUSION

The trial court's judgment is affirmed.