Anthony GIGLIOBIANCO, Appellant,

v.

The STATE of Texas, Appellee.

No. 04–02–00895–CR.

Court of Appeals of Texas,
San Antonio.

Aug. 31, 2005.

Rehearing Overruled Oct. 10, 2005.

Discretionary Review Granted
March 1, 2006.

Adam L. Kobs, Mark Stevens, San Antonio, for appellant.

Daniel Thornberry, Asst. Crim. Dist. Atty., San Antonio, for appellee.

Sitting: ALMA L. LÓPEZ, Chief Justice, SANDEE BRYAN MARION, Justice, PHYLIS J. SPEEDLIN, Justice.

## OPINION

Opinion by SANDEE BRYAN MARION, Justice.

This appeal is on remand from the Texas Court of Criminal Appeals. On original submission, we held that the trial court committed reversible error in admitting the results of a breath test in the absence of retrograde extrapolation citing this court's opinion in *Stewart v. State,* 103 S.W.3d 483 (Tex.App.-San Antonio 2003), *rev'd,* 129 S.W.3d 93 (Tex.Crim.App.2004). After reversing this court's opinion in *Stewart,* the Texas Court of Criminal Appeals vacated our judgment in the instant appeal and remanded the cause to this

court for reconsideration in light of its opinion in *Stewart. Gigliobianco v. State,* No. 1851–03, 2004 WL 3092759 (Tex.Crim. App. May 19, 2004). We subsequently abated the appeal on remand pending the Court of Criminal Appeals' decision in *State v. Mechler,* 153 S.W.3d 435 (Tex. Crim.App.2005). The appeal was reinstated after the opinion was issued in *Mechler,* and both parties were permitted to rebrief the issues on remand.

Defendant, Anthony Gigliobianco, challenges his conviction of driving while intoxicated asserting that the trial court abused its discretion in admitting intoxilyzer test results in violation of Rule 403 and Rule 702 of the Texas Rules of Evidence. Defendant also contends that the trial court violated his statutory and constitutional rights by refusing to include a presumption of innocence instruction in the jury charge and erred in overruling his objections to certain testimony. We affirm.

## RULE 403 CHALLENGE

■ In his first issue, defendant asserts his breath test results should have been excluded because this evidence was unfairly prejudicial, misleading, and confusing. A trial court's ruling on the admissibility of evidence is reviewed under an abuse of discretion standard. *Montgomery v. State,* 810 S.W.2d 372, 391 (Tex. Crim.App.1990). The test for whether a trial court abused its discretion is whether the action was arbitrary or unreasonable. *Mechler,* 153 S.W.3d at 439. An appellate court should not reverse a trial judge whose ruling was within the zone of reasonable disagreement. *Id.* at 440.

■ In *Mechler,* the Texas Court of Criminal Appeals analyzed the admissibility of intoxilyzer test results in the absence of retrograde extrapolation in response to a Rule 403 challenge. Under Rule 403, all relevant evidence is admissible unless "its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence." TEX.R. EVID. 403. Rule 403 does not exclude all prejudicial evidence; rather, it focuses only on the danger of "unfair" prejudice. *Mechler,* 153 S.W.3d at 440. "Unfair prejudice" pertains "only to relevant evidence's tendency to tempt the jury into finding guilt on grounds apart from proof of the offense charged." *Id.*

■ We assess four nonexclusive factors when determining whether the probative value of evidence is substantially outweighed by the danger of unfair prejudice. *Id.; Manning v. State,* 114 S.W.3d 922, 926 (Tex.Crim.App.2003). These factors include: (1) "how compellingly the evidence serves to make a fact of consequence more or less probable"; (2) the potential the evidence has to impress the jury in some irrational but nevertheless indelible way; (3) "the time the proponent will need to develop the evidence, during which the jury will be distracted from consideration of the indicted offense"; and (4) "the force of the proponent's need for this evidence to prove a fact of consequence, *i.e.,* does the proponent have other probative evidence available to him to help establish this fact, and is this fact related to an issue in dispute." *Mechler,* 153 S.W.3d at 440–41; *Manning,* 114 S.W.3d at 926.

■ Here, defendant was stopped at 9:46 p.m. and submitted two breath test samples approximately eighty minutes after he stopped driving. Those samples showed a blood alcohol content level of .09 and .092. Although these results are distinguishable from cases previously decided by this court,[1] the results nonetheless were

---

1. *See, e.g., Trillo v. State,* 165 S.W.3d at 763 (Tex.App.-San Antonio 2005, no pet.) (one

probative of whether defendant consumed alcohol before operating a motor vehicle and whether he was impaired as a result of his alcohol consumption. *Mechler*, 153 S.W.3d at 440 (holding that intoxilyzer test results are probative evidence of intoxication under both the per se and impairment theories of intoxication). Next, although these test results are prejudicial to defendant, they are not *unfairly* prejudicial because they relate directly to the charged offense. *Id.* at 440–41 (holding that "unfair prejudice" only occurs if relevant evidence tends to tempt a jury into finding guilt on grounds other than proof of the charged offense). Because the intoxilyzer results relate directly to the charged offense, the amount of time the State spent developing the evidence is inconsequential because it could not have distracted the jury from the charged offense. *Id.* at 441.

Finally, in addition to the intoxilyzer test results, the record includes Officer Heim's testimony regarding his reported observations of defendant's bloodshot eyes, slurred speech, odor of alcohol, and poor performance on field sobriety tests. The record also includes a videotape of the stop on which defendant admits that he had consumed alcohol. In light of this other probative evidence, we conclude "the State

[did] not have a great need for the test results." *Mechler*, 153 S.W.3d at 441–42.

After considering all the factors, we conclude the trial court's ruling was not outside the "zone of reasonable disagreement." *Id.* at 440. Accordingly, we hold the trial court did not abuse its discretion in admitting the intoxilyzer test results.

## RULE 702 CHALLENGE

 In his second issue, defendant asserts the breath test results should have been excluded under Rule 702 because, in the absence of retrograde extrapolation proving his alcohol content *at the time he drove*, the test results did not assist the jury to understand the evidence or determine a fact in issue. Defendant also complains that the State's expert's testimony did not "fit" the facts of the case because the expert did not know any of defendant's characteristics or his alcohol content when he drove. Instead, defendant contends the expert was only able to say he had an alcohol content greater than .008 *when tested.* According to defendant, "testimony about his intoxication more than an hour after he drove was not helpful to the jury, which was required to determine whether he drove while intoxicated." [2]

hour; 0.133 and 0.130); *Stewart v. State,* 162 S.W.3d 269, 274 (Tex.App.-San Antonio 2005, pet. stricken)(eighty minutes; 0.160 and 0.154); *Kelly v. State,* No. 04–04–00456–CR, 2005 WL 839505, at *2 (Tex.App.-San Antonio Apr. 13, 2005, no pet.) (not designated for publication) (three hours; 0.153 and 0.154); *Martinez v. State,* 155 S.W.3d 491, 494 (Tex. App.-San Antonio 2004, no pet.) (sixty-two minutes; 0.273 and 0.277); *but see Adams v. State,* 156 S.W.3d 152, 155–56 (Tex.App.-Beaumont 2005, no pet.) (fifty-four minutes; 0.090 and 0.094).

2. Defendant also argues the trial court erred by admitting the breath test results without also admitting expert testimony linking those

results to his alcohol concentration at the time he drove, because the court encouraged the jury to undertake its own extrapolation. The Texas Court of Criminal Appeals rejected this argument in *Stewart. See Stewart,* 129 S.W.3d at 97 (holding breath test results were properly admitted evidence because "the jury did not need to establish Stewart's exact blood alcohol concentration at the time she drove; the jury only needed to believe beyond a reasonable doubt that either her blood alcohol concentration was .10 or more, or that she failed to have the normal use of her mental or physical faculties by reason of introduction of alcohol into her body, at the time she drove").

 Admission of expert testimony is governed by Texas Rule of Evidence 702.[3] When addressing the admissibility of expert testimony, the trial court's "first task is to determine whether the testimony is sufficiently reliable and relevant to help the jury in reaching accurate results." *Kelly v. State*, 824 S.W.2d 568, 572 (Tex. Crim.App.1992). Expert testimony must be sufficiently tied to the facts to meet the simple requirement that it be helpful to the jury. *See Jordan v. State*, 928 S.W.2d 550, 555 (Tex.Crim.App.1996) (discussing the "fit" requirement of Rule 702).

Defendant does not challenge the reliability of the expert's testimony regarding the breath test results, but only asserts admission of the test results and the testimony regarding the test results was not helpful to the jury in the absence of retrograde extrapolation. Here, the jury was required to determine whether defendant's blood alcohol concentration was .08 or more at the time he drove (per se theory of intoxication) or that he did not have the normal use of his physical faculties at the time he drove by reason of the introduction of alcohol into his body (impairment theory of intoxication).[4] Although the breath test results might not have been conclusive proof that defendant was intoxi-cated at the time he drove, that is of no consequence. *See Stewart*, 129 S.W.3d at 96. The jury did not need to establish defendant's exact blood alcohol concentration at the time he drove. *Id.* at 97. The jury only needed to believe beyond a reasonable doubt that he was intoxicated under either theory. *Id.* Despite defendant's claim, the breath test results were helpful to the jury even without retrograde extrapolation because the results provide evidence that defendant had consumed alcohol. *See id.* at 96 (addressing this issue in terms of relevancy under Rule 401). Thus, the intoxilyzer test results and the expert testimony were properly admitted because "they are pieces in the evidentiary puzzle for the jury to consider in determining whether [defendant] was intoxicated at the time he drove." *Id.* at 97. Accordingly, we hold the trial court did not abuse its discretion in admitting the intoxilyzer test results.

## PRESUMPTION OF INNOCENCE

Defendant asserts the trial court violated his federal constitutional and statutory rights by denying his request to include an instruction on the presumption of innocence in the jury charge.[5]

3. Rule 702 of the Texas Rules of Evidence provides:
> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion of otherwise.
> Tex.R. Evid. 702.

4. *See* Act of Jun. 19, 1993, 73d Leg., R.S., ch. 900 § 1.01, 1993 Tex. Gen. Laws 3586, 3696, (amended 1999) ((current version at Tex. Pen. Code Ann. § 49.01) (Vernon 2003)).

5. At trial, defendant proposed the following jury instruction:

> All persons are presumed to be innocent and no person may be convicted of an offense unless each element of the offense is proven beyond a reasonable doubt. The fact that a person is arrested, confined, or indicted for, or otherwise charged with the offense gives rise to no inference of guilt at his trial. The law does not require a defendant to prove his innocence or produce any evidence at all. The presumption of innocence alone is sufficient to acquit the defendant, unless the jurors are satisfied beyond a reasonable doubt of the defendant's guilt after careful and impartial consideration of all the evidence.

### Alleged Due Process Violation

■ Defendant contends that the failure to include the presumption of innocence instruction violated his due process rights under the United States Constitution. There is no constitutional requirement that an instruction on the presumption of innocence be given in every criminal trial. *Kentucky v. Whorton*, 441 U.S. 786, 789, 99 S.Ct. 2088, 60 L.Ed.2d 640 (1979). Therefore, a trial court's failure to give an instruction on the presumption of innocence "must be evaluated in light of the totality of the circumstances including all the instructions to the jury, the arguments of counsel, whether the weight of the evidence was overwhelming, and other relevant factors, to determine whether the defendant received a constitutionally fair trial." *Id.*; *see also Hernandez v. State*, 107 S.W.3d 41, 45 (Tex.App.-San Antonio 2003, pet. ref'd).

■ In this case, the totality of the circumstances indicate the trial court did not err by denying defendant's requested instruction. Although the jury charge did not include a specific instruction on the presumption of innocence, the charge instructed the jury that it could find defendant guilty only if it believed the evidence beyond a reasonable doubt. The trial judge also instructed the jury not to consider defendant's choice to not testify and not to consider any evidence not introduced at trial. Finally, the charge instructed the jury that because the jurors are not witnesses, they should not relate to other jurors their own experience or knowledge.

The weight of the evidence at trial was such that the jury could have found defendant guilty of driving while intoxicated. During trial, the jury heard Officer Heim's testimony regarding his reported observations of defendant's bloodshot eyes, slurred speech, odor of alcohol, and poor performance on field sobriety tests, including the horizontal nystagmus test. The jury also viewed a videotape of the stop in which defendant admits he had consumed alcohol. The jury also heard that defendant submitted two breath test samples approximately eighty minutes after he stopped driving. Those samples showed defendant had a blood alcohol content level of 0.09 and 0.092, which is above the legal limit of .08.

During voir dire, the trial court explained the presumption of innocence by stating, "As you know, in the United States our law is a person is presumed innocent until each and every element of the offense charged is proven beyond a reasonable doubt ... at this point the law presumes the person innocent." The trial court also informed the jury that the burden of proof "stays on the State the whole time." The trial court further emphasized, "the burden to prove those charges beyond a reasonable doubt remains on the State throughout the entire case. It never shifts over to the defendant to prove anything because our law presumes that he is innocent." The State also explained its burden of proof and the presumption of innocence stating, "everybody understands that he is totally innocent as he sits here right now? The State has to prove everything. He does not have to disprove anything."

■ Defense counsel also emphasized the presumption of innocence during voir dire, stating, "[The judge] talked about the presumption of innocence. Everybody has heard that, right? We all know that in this country you are presumed to be innocent. And it is one of the few countries in the world in which we are presumed to be innocent. In most of the countries in the world, a person comes to court and they presume he is guilty. He has to prove he is innocent. Well, you might prefer to be in

a system like that, but the system you are in is the one where people are presumed innocent. So that means you have to look at Anthony right now as he sits there and say, He is innocent as far as I am concerned." Defense counsel further explained, "So what does the State have to do to overcome the presumption of innocence? The law tells very specifically what it has to do. These prosecutors have to bring you proof, not just proof of any sort, but proof of a particular quality and quantity, namely, proof beyond a reasonable doubt." Defense counsel emphasized the presumption again toward the end of his general voir dire, stating, "We have got to have some people who come in here and are willing to look at him and presume he is innocent and to make the State prove its case beyond a reasonable doubt." Both the prosecutor and defense counsel emphasized the need to prove the elements of the offense beyond a reasonable doubt in closing arguments. The presumption of innocence "operates at the guilt phase of a trial to remind the jury that the State has the burden of establishing every element of the offense beyond a reasonable doubt." *Delo v. Lashley*, 507 U.S. 272, 278, 113 S.Ct. 1222, 122 L.Ed.2d 620 (1993). Looking at the totality of the circumstances, we hold the trial court did not violate defendant's constitutional rights by refusing his requested instruction.

***Alleged Failure to Set Forth Law Applicable to the Case.***

■ Defendant contends that the failure to include the presumption of innocence instruction violated his statutory rights under articles 36.14 and 36.15 of the Texas Code of Criminal Procedure. A statutory charge error under articles 36.14 through 36.19 is reviewed under the standard set forth in *Almanza v. State. Rose v. State*, 752 S.W.2d 529, 553 (Tex.Crim. App.1987). *Almanza* instructs an appel-

late court to undertake a two-step review; first, the court must determine whether error actually exists in the charge; second, if the court finds error, it must determine whether sufficient harm resulted from the error to require reversal. *Almanza v. State*, 686 S.W.2d 157, 171 (Tex.Crim.App. 1984). Alleged error in the charge is reviewed by looking at the entire charge, the state of the evidence, the argument of counsel, and any other relevant information contained in the record. *Id.*

■ Article 36.14 states that the trial court must "deliver to the jury ... a written charge distinctly setting forth the law applicable to the case ..." TEX.CODE CRIM. PROC. ANN. art. 36.14 (Vernon Supp. 2005). However, nothing in articles 36.14 or 36.15 requires a trial court to give an instruction on the presumption of innocence. *See* TEX.CODE CRIM. PROC. ANN. art. 36.14, 36.15. In fact, article 36.15 grants the trial court the discretion to deny a charge. *See* TEX.CODE CRIM. PROC. ANN. art. 36.15 ("The court shall give or refuse these charges"). In the present case, a review of the entire jury charge, the closing arguments for the State and the defense, as well as the evidentiary record, demonstrates that the jury was repeatedly instructed on the State's burden of proof and defendant's presumption of innocence. That is, the State was required to prove the charged offense beyond a reasonable doubt, and if the jury had a reasonable doubt, it must find defendant not guilty. Accordingly, we find the challenged jury instruction was appropriate. Therefore, we hold the trial court did not violate defendant's statutory right's by refusing his requested instruction.

**TESTIMONY REGARDING EFFECT OF TEST RESULTS**

■ In his fifth issue, defendant contends the trial court erred in overruling

his objection that Officer Heim was not qualified to testify that the intoxilyzer test results indicated to him that defendant was intoxicated. The erroneous admission of evidence is nonconstitutional error. *See King v. State,* 953 S.W.2d 266, 271 (Tex. Crim.App.1997). Nonconstitutional error "that does not affect substantial rights must be disregarded." TEX.R.APP. P. 44.2(b). A substantial right is affected when the error had a substantial and injurious effect or influence in determining the jury's verdict. *King,* 953 S.W.2d at 271. A criminal conviction should not be overturned for nonconstitutional error if the appellate court, after examining the record as a whole, has fair assurance that the error did not influence the jury, or had but a slight effect. *Johnson v. State,* 967 S.W.2d 410, 417 (Tex.Crim.App.1998).

We conclude the trial court's error, if any, did not influence the jury's verdict because another State expert also testified about the test results. George McDougall, whose expertise was emphasized by the State, stated that defendant's test results were greater than 0.08 and then immediately stated that a person with an alcohol concentration of 0.08 would have lost the normal use of his mental and/or physical faculties. Because McDougall's testimony was substantially similar to that of Officer Heim, the error, if any, was harmless.

## CONCLUSION

We overrule defendant's issues and affirm the trial court's judgment.

Dissenting opinion by ALMA L. LÓPEZ, Chief Justice.

LÓPEZ, Chief Justice, dissenting.

For the reasons stated below, I respectfully dissent from the majority's holding that the trial court did not err in overruling Gigliobianco's Rule 403 objection to the admissibility of the breath test results. The majority concludes that the first three nonexclusive factors weigh in favor of admissibility. The primary stumbling block with regard to the second and third factors is language in *Mechler*[1] which appears to dictate that these factors will always favor admissibility, truncating the need for any additional analysis regardless of the facts presented. Although the majority notes that the test results in the instant case are distinguishable from the results in cases previously decided by this court, the majority concludes that the first factor weighs in favor of admissibility because the results were "nonetheless probative" of whether Gigliobianco consumed alcohol and was impaired as a result. The majority concedes that the fourth factor weighs against admissibility.

Although *Mechler* may dictate that the second and third factors always weigh in favor of admissibility, I agree with Judge Cochran that the four expressly defined factors should not be given equal weight so that in every case the trial court cannot be said to have abused its discretion because *Mechler* dictates that two of the four factors favor admissibility. In addition, I believe the trial court cannot ignore the impact the admission of the intoxilyzer evidence has on the presentation of other evidence. I believe this impact can and should be considered by the trial court as an additional factor in the balancing test. Most importantly, I believe this case presents a cogent argument for the Texas Court of Criminal Appeals to reconsider the analysis set forth in Judge Cochran's concurring opinion in *Mechler* and to provide further guidance to the trial and appellate courts regarding the application of the Rule 403 balancing test in this context.

1. State v. *Mechler,* 153 S.W.3d 435 (Tex.Crim. App.2005).

### Probative Value

"The first factor looks to the evidence's probativeness or how compellingly the evidence serves to make a fact of consequence more or less probable." *Id.* "[T]he relative probative value of the test depends primarily upon two variables: 1) the degree to which the test result exceeds the legal limit of 0.08%; and 2) the amount of time elapsed between driving and the taking of the test." *Id.* at 449 (Cochran, J., concurring). As Judge Cochran explains:

> The higher the test result and the shorter the time between driving and testing, the more likely the logical inference is that the defendant had a BAC level at or above 0.08% at the time of driving. The stronger the inference of a BAC of 0.08% or greater at the time of driving, the less significant is the necessity for expert retrograde extrapolation testimony. Conversely, the weaker the inference of guilt, the more vital is the necessity for evidence that relates an accused's BAC test result back to the time of driving. When a test is obtained long after the arrest and the result is at or below the legal limit, the logical inference that the person had a 0.08% BAC at the time of driving may be so tenuous that a trial judge appropriately exercises his discretion by excluding that specific test result under Rule 403 absent expert testimony that extrapolates the test result back to the time of driving.

*Id.*

The reason the probative value of the test result is so dependent on the actual test result and the elapsed time is demonstrated by the scientific literature cited by the Texas Court of Criminal Appeals in *Mata v. State*, 46 S.W.3d 902, 910–13 (Tex. Crim.App.2001). The court summarized one of those articles as stating, "[I]n most DWI cases, the person is arrested shortly after his last drink. His stomach has not yet absorbed all the alcohol, and his BAC will continue to rise for some time after arrest, resulting in a tested BAC which is higher than what it was at the time of the driving." *Id.* at 913. Another article is quoted as stating, "[T]he potential rate of error increased as time went on. Indeed, 'this variability was particularly large' when extrapolation back one hour or more was attempted.'" *Id.* at 912. Another article stated, "[T]he major possible source of error ... [is when] continuing absorption is ignored." *Id.* at 912. A final article noted, "[I]t should be remembered that the process of alcohol absorption is highly variable. The limitations and pitfalls associated with retrograde extrapolations are often not appreciated by laymen and the courts." *Id.* at 911.

In this case, Gigliobianco was stopped at 9:46 p.m. The tests were administered at 11:10 p.m. and 11:12 p.m. The test results were 0.090% and 0.092%. As the majority notes, the facts in this case are distinguishable from cases previously decided by this court. *See, e.g., Trillo v. State*, 165 S.W.3d 763, 769 (Tex.App.-San Antonio 2005, no pet.) (one hour; 0.133 and 0.130); *Stewart v. State*, 162 S.W.3d 269, 274 (Tex.App.-San Antonio 2005, pet. stricken) (eighty minutes; 0.160 and 0.154); *Kelly v. State*, No. 04–04–00456–CR, 2005 WL 839505, at *2 (Tex.App.-San Antonio Apr. 13, 2005, no pet.) (three hours; 0.153 and 0.154) (not designated for publication); *Martinez v. State*, 155 S.W.3d 491, 494 (Tex.App.-San Antonio 2004, no pet.) (sixty-two minutes; 0.273 and 0.277); *but see Adams v. State*, 156 S.W.3d 152, 155–56 (Tex.App.-Beaumont 2005, no pet.) (fifty-four minutes; 0.090 and 0.094). Given that almost one and one half hours elapsed between the

time of driving and the time of the test,[2] the test results of 0.090% and 0.092% do not compellingly support an inference that Gigliobianco had a 0.08% BAC at the time of driving. Although the majority concludes that the results were "nonetheless probative," I believe the probative *weight* of the evidence is critical when an appellate court is reviewing the trial court's decision to admit evidence under a Rule 403 balancing test.

### Additional Factor

In *Mechler*, the Court of Criminal Appeals stated that "a proper Rule 403 analysis includes, *but is not limited to,*" the four factors analyzed above. 153 S.W.3d at 440 (emphasis added). Another factor that I believe must be considered in the Rule 403 balancing is the effect the introduction of the test results will have on the remainder of the case. In this case, the admission of the test results allowed the State to present the testimony of George McDougall. Absent the introduction of the test results, none of McDougall's testimony would have been relevant because it all related to the intoxilyzer test machine and the "effect" of the test results. The only other witness presented by the State was the arresting officer.

George McDougall testified that he is responsible for maintaining the breath test instruments in Bexar County and is the supervisor of the certified breath test operators in Bexar County. McDougall stated that testing "over many decades with thousands of individuals" has established "that every person that has been tested has been impaired in their mental and physical faculties at 0.08." McDougall explained the scientific principles and theories underlying the Intoxilyzer model number 5000 and the manner in which the Intoxilyzer instrument applies those theories. McDougall stated that the machine used to test Gigliobianco was certified, and McDougall described the maintenance performed on the machine. McDougall stated that maintenance checks performed on the machine the morning before Gigliobianco was tested and three days later revealed that the machine was operating correctly. Based on these checks, McDougall opined that the machine was operating correctly when Gigliobianco was tested. McDougall stated that the test report revealed that the test met the criteria of the regulations for an adequate breath test. McDougall testified regarding the preparation and use of reference samples and stated that the reference sample used during Gigliobianco's test was within the tolerance of the predicted reference sample value. McDougall explained the steps the operator of an Intoxilyzer machine must follow before taking the breath test.

McDougall testified that Gigliobianco's first sample was delivered at 11:10 p.m., and the other at 11:12 p.m. The test results were 0.090 and 0.092, respectively. McDougall stated that Gigliobianco's results were greater than 0.080 and a person with an alcohol concentration of 0.080 would have lost the normal use of his mental and/or physical faculties. McDougall admitted that he would not be able to speak to what Gigliobianco's breath test results would have been if the test was administered at the scene. McDougall admitted that a test result above the legal limit at the time of the test does not mean that the person's alcohol concentration was above the legal limit at the time the person was driving. McDougall agreed that the person's alcohol concentration could be

---

**2.** *See Mata v. State,* 46 S.W.3d at 912 (quoting scientific literature noting that potential rate of error in extrapolation is particularly large when extrapolation back one hour or more is attempted).

lower at the time the person was driving than at the time the person was tested. McDougall agreed that the processes of absorption and elimination would potentially cause differences between alcohol concentrations at the time of driving and at the time of testing. McDougall agreed that these processes would be affected by the person, the consumption of food, the concentration of alcohol and the speed of consumption. McDougall stated that from the test results, he could not determine if Gigliobianco was absorbing or eliminating alcohol at the time of the test. McDougall stated that he could not tell the jury what Gigliobianco's alcohol concentration would have been at the time he was driving.

Although McDougall informed the jury that he could not "extrapolate" the test results back to the time Gigliobianco was driving, the admission of the test results allowed McDougall to state his "expert" opinion that testing "over many decades with thousands of individuals" has established "that every person that has been tested has been impaired in their mental and physical faculties at 0.08."

### Balancing

With regard to the four defined factors that a trial court is to consider in a Rule 403 analysis, Judge Cochran's concurring opinion in *Mechler* indicates that the factors should not be given equal weight by the trial court. In *Mechler*, Judge Cochran stated, "In balancing the probative value of an intoxilyzer test result against its potential for creating unfair prejudice or confusion of the issues, the two most significant items in that balance are: 1) the actual test result itself and how much it exceeded the legal limit of 0.08% BAC; and 2) the time interval between the defendant's driving and the taking of the test." 153 S.W.3d at 444 (Cochran, J., concurring). Later in her opinion, Judge Coch-

ran emphasized, "The single most important factor in the context of admitting breath test results in the absence of extrapolation testimony is the inherent probative value of the test result." *Id.* at 449.

In this case, the test results were close to the legal limit and were obtained almost an hour and a half after Gigliobianco was stopped. Accordingly, the test results coupled with the time interval call into question "the inherent probative value of the test result." *Id.* Because this factor is entitled to added weight as the "single most significant factor" in the Rule 403 balancing and given the lack of the need for the evidence and the effect the admission of the test results had on the remainder of the case, I would conclude that the trial court abused its discretion in admitting the intoxilyzer test results.

### Harm Analysis

Although I would conclude that the trial court erred in admitting the test results, the erroneous admission of evidence must be disregarded if the appellate court, after examining the record as a whole, has a fair assurance that the error did not influence the jury or had but a slight effect. *Bagheri v. State,* 119 S.W.3d 755, 763 (Tex.Crim.App.2003). The test results were the only evidence that supported a finding of guilt under the *per se* definition of intoxication. Absent those results, the *per se* definition of intoxication could not have been included in the jury charge. *See Bagheri v. State,* 119 S.W.3d at 761–64 (holding erroneous admission of retrograde extrapolation testimony in support of *per se* definition of intoxication not harmless despite submission of alternative definition of intoxication). Furthermore, because the test results were admitted, McDougall was permitted to testify regarding his "expert opinion" that testing "over many decades

with thousands of individuals" has established "that every person that has been tested has been impaired in their mental and physical faculties at 0.08." *See Solomon v. State*, 49 S.W.3d 356, 365 (Tex. Crim.App.2001) (listing whether testimony was elicited from an expert as an important factor in the harm analysis). Having considered the record as a whole, I would not have a fair assurance that the error did not influence the jury or had but a slight effect.

Because I believe the trial court committed reversible error in overruling Gigliobianco's Rule 403 objection to the admissibility of the breath test results, I would reverse the trial court's judgment and remand the cause to the trial court for a new trial. Because the majority holds to the contrary, I respectfully dissent.