02-11-148-CR













 
 
 
 
 
 
 
 
 
 
 
 
 
 COURT OF APPEALS
 SECOND DISTRICT OF TEXAS
 FORT WORTH
  
 
 


 

 

NO. 02-11-00148-CR

 

 









 
 
 Oscar Dobbs
  
  
  
 v.
  
  
  
 The State of Texas
 
 
 §
  
 §
  
 §
  
 §
  
 §
 
 
 From Criminal District Court No. 1
  
 of
 Tarrant County (1202690D)
  
 November
 8, 2012
  
 Opinion by Justice Gabriel
  
 (nfp)
 
 


 

JUDGMENT

 

          This court has considered the record
on appeal in this case and holds that there was no error in the trial court’s
judgment.  It is ordered that the
judgment of the trial court is affirmed. 

 

SECOND DISTRICT
COURT OF APPEALS 








 

 

 

 

By_________________________________

    Justice Lee Gabriel

 



 

 








 


 
 
 
 
 
 
 
 
 
 
 
 
 
 COURT OF APPEALS
 SECOND DISTRICT OF TEXAS
 FORT WORTH
  
 
 


 

 

 

NO. 02-11-00148-CR


 
 
 Oscar Dobbs
 
 
  
 
 
 APPELLANT
 
 
 
 
 V.
 
 
 
 
 The State of Texas
 
 
  
 
 
 STATE
 
 


----------

FROM Criminal District Court No. 1 OF Tarrant
COUNTY

----------

MEMORANDUM
OPINION[1]

----------

Introduction

Appellant
Oscar Dobbs appeals his conviction for driving while intoxicated (DWI) with a
child under the age of fifteen.  We
affirm.




Background Facts and Procedural History

Sansom
Park Police Officer Randy Driver initiated a traffic stop late one night after he
saw Appellant’s car turn westbound from an intersection into the eastbound
lanes of Highway 199 before it hopped the median into the westbound lane.  Appellant promptly pulled into a parking lot
and stopped, and Officer Driver, noticing the odor of an alcoholic beverage as
he walked up to the car, immediately asked Appellant, “How much have you had to
drink tonight?”  Appellant’s wife and two
children were in the car, and Appellant said that they had been to a party and
he was just about to let his wife take over the driving.

Officer
Driver ordered Appellant to turn off his engine and “just sit tight” while he ran
Appellant’s driver’s license on the patrol unit’s computer.  After a few minutes, he summoned Appellant to
the back of Appellant’s car, where––ultimately accompanied by two other
uniformed officers––he asked Appellant several questions that included the
following over approximately a five-minute period:

          Are you sick?

          Are you injured?

          Do you have any physical defects?

          Under a doctor’s care?

          When was the last time you went to the
doctor?

          Are you diabetic?

          Do you take insulin?

          Are you epileptic?

          Do you take drugs?

          Do you take medicine?

          What kind of medicine do you take?

          How often do you take that?

          Have you taken any of those today?

          Do you wear contacts?

          Do you wear glasses?

          What time do you think it is right now
without looking at a watch?

          A.M. or P.M?

          What time did you start drinking
today?

          Twelve noon, twelve A.M.?

          So thirty minutes ago?

          What time did you stop drinking?

          Do you have any open containers in the
car?

          So how long ago?

          Where were you drinking at?

          What’s the name of the place?

          What city is it in?

          Who were you drinking with?

          Do you know where you are at right now?

          Where are you?

          Jacksboro and what?

          Where were you headed right now?

          Where you going?

          Where are you headed to?

          What were you drinking?

          How much have you had to drink tonight?

          Coors Light?

          You don’t know how many of them?

          Can you estimate?

          When did you last eat?

          What did you have to eat?

          When did you last sleep?

          How many hours of sleep did you get?

          Do you feel the effects of alcohol
right now?

Officer
Driver then administered three standard field sobriety tests, the horizontal
gaze nystagmus (HGN), the walk-and-turn, and the one-leg stand.  He detected six out of six clues of
intoxication on the HGN, three out of eight on the walk-and-turn and three out
of six on the one-leg stand.  Officer Driver
then placed Appellant under arrest for DWI and transported him to the police
station, where Appellant produced two breath samples showing alcohol
concentrations of .086 and .087, respectively, which are over the legal limit
of .08.

The
State charged Appellant with DWI with a child under the age of fifteen.  At trial, and outside the jury’s presence, Appellant
urged an oral motion to suppress the statements he had made to Officer Driver,
arguing, as he does now on appeal, that the sheer number of questions asked
Appellant, as set out above, transformed the stop from an investigative
detention into a custodial interrogation, which required Miranda warnings that Officer Driver had failed to give.  The trial court denied the motion to
suppress, and the jury returned a verdict of guilty and recommended a $1,000
fine and 180 days’ state jail confinement, both punishments suspended.  The trial court sentenced Appellant
accordingly, and ordered him to serve five years’ community supervision.

Issue on Appeal

In
his sole issue, Appellant argues that because he was interrogated while in
custody, the law required that he first have been advised of his rights under Miranda v. Arizona, 384 U.S. 436, 86
S. Ct. 1602.  Because Officer Driver
failed to administer the Miranda
warning, Appellant argues that his statements made in response to the questioning
should have been suppressed.  The State counters
that the questions were not excessive––they took less than five minutes––and
were in line with case law holding that such questioning is an acceptable part
of routine traffic stops and, therefore, does not require Miranda warnings before the responses it generates may be admitted
in evidence at trial.  See Campbell v. State, 325 S.W.3d 223,
235 (Tex. App.––Fort Worth 2010, no pet.).




Standard
of Review

We
review a trial court’s ruling on a motion to suppress evidence under a bifurcated
standard of review, giving almost total deference to the trial court’s
determination of historical facts and reviewing de novo the trial court’s
application of law to facts that do not turn on assessments of credibility and
demeanor.  Amador v. State, 221 S.W.3d 666, 673 (Tex. Crim. App. 2007); Ford v. State, 158 S.W.3d 488, 493 (Tex.
Crim. App. 2005); Estrada v. State,
154 S.W.3d 604, 607 (Tex. Crim. App. 2005); Guzman v. State, 955 S.W.2d
85, 88–89 (Tex. Crim. App. 1997).

Discussion

The
need for Miranda
warnings arises when a person has been subjected to a custodial
interrogation.  See Miranda,
384 U.S. at 444, 86 S. Ct. at 1612. 
Article 38.22
of the Texas Code of Criminal Procedure generally precludes the use
of statements resulting from custodial interrogation absent compliance with its
procedural safeguards that include administering Miranda warnings.  See Tex. Code
Crim. Proc. Ann. art. 38.22, § 2 (West 2005); Arthur v. State, 216 S.W.3d 50, 56 (Tex.
App.—Fort Worth 2007, no pet.).  If a
statement is not the result of custodial interrogation, neither Miranda
nor article 38.22
requires its suppression.  Custodial
interrogation is “questioning initiated by law enforcement officers after a
person has been taken into custody or otherwise deprived of his freedom of
action in any significant way.”  Miranda, 384 U.S. at 444, 86 S. Ct. at
1612.

One
situation in which a person detained by the police is in custody for purposes of
determining whether Miranda warnings
are required is if a reasonable person under the same circumstances would
believe that his or her freedom of movement is restrained to the degree
associated with a formal arrest.  Dowthitt v. State, 931 S.W.2d 244, 255
(Tex. Crim. App. 1996); Jordy v. State,
969 S.W.2d 528, 532 (Tex. App.—Fort Worth 1998, no pet.).

The
stop in this case was recorded on videotape and admitted at trial.  We have reviewed the tape.  It shows that Appellant was ordered to turn
off his engine, told to “sit tight,” summoned to the back of his car where he
was eventually surrounded, albeit loosely, by three officers in uniform while Officer
Driver asked him the questions quoted above. 
We doubt whether a reasonable person under these circumstances would
have felt free to leave.  But even if we were
to assume for the sake of argument that Appellant was subjected to custodial
interrogation, based upon our review of the record as a whole, we are convinced
beyond a reasonable doubt, that his responses to these questions did not
contribute to the verdict or to the punishment assessed.  See
Tex. R. App. P. 44.29(a).

Some
of the incriminating statements he made were not made in response to questioning.  For instance, he volunteered that he did not
like to let his wife drive at night so they decided that he would drive around
the block to see if he could drive.  The
most incriminatory things he said that were in response to questioning were that
he had been drinking beer up until shortly before he was pulled over, and when
asked if he was feeling the effects of alcohol, he said, “I do feel a little
dizzy.”

But
in addition to these statements, the jury heard testimony from Officer Driver that
he had stopped Appellant after seeing him drive on the wrong side of the road
and then over a median into the proper lane. 
They also heard testimony that Officer Driver had believed that Appellant
had been intoxicated after seeing his driving, smelling alcohol on him, and observing
his performance on the field sobriety tests––the failed HGN, walk-and-turn and
one-leg stand tests.  They also heard
testimony from Officer Aaron Callahan, who having observed Appellant at the
scene, including Appellant’s performance on the field sobriety tests, testified
that Appellant appeared to have been intoxicated.  Further, the jury watched the video that
showed Appellant struggling with his balance during the walk-and-turn and
one-leg stand tests.  Finally, the jury
heard evidence that Appellant provided two breath samples with alcohol
concentrations of .086 and .087, respectively. 
On this evidence the jury reasonably could have believed that Appellant
was intoxicated by having a breath alcohol concentration over the legal limit
of .08.  See Trillo v. State, 165 S.W.3d 763, 768 (Tex. App.––San Antonio
2005, no pet.).

Therefore,
after carefully reviewing the record and performing the required harm analysis
under rule 44.2(a), even if we assumed the trial court erred to allow
Appellant’s statements, we hold beyond a reasonable doubt that their admission did
not contribute to Appellant’s conviction or punishment.  Tex. R. App. P. 44.2(a).  Accordingly, we overrule Appellant’s sole
point.  See Campbell, 325 S.W.3d at 239.

Conclusion

Having
overruled Appellant’s sole issue on appeal, we affirm the trial court’s
judgment.

 

 

LEE GABRIEL

JUSTICE

 

PANEL:  WALKER, MCCOY and
GABRIEL, JJ.

 

DO NOT PUBLISH

Tex. R. App. P. 47.2(b)

 

DELIVERED:  November 8, 2012











[1]See
Tex. R. App. P. 47.4.