DELO, SUPERINTENDENT, POTOSI CORREC-
TIONAL CENTER *v.* LASHLEY

No. 92–409.   Decided March 8, 1993

PER CURIAM.*

I

Respondent Frederick Lashley brutally beat and stabbed
to death his 55-year-old, physically impaired cousin and fos-
ter mother, Janie Tracy, in the course of robbing her.   An

---

*JUSTICE SOUTER joins only Part I of this opinion.

adult in the eyes of Missouri law at age 17, Lashley was convicted of capital murder, Mo. Rev. Stat. § 565.001 (1978) (repealed Oct. 1, 1984), and sentenced to death. At a conference preceding the penalty phase of the trial, one of Lashley's attorneys asked the judge to instruct the jury on the mitigating circumstance that "[t]he defendant ha[d] no significant history of prior criminal activity," Mo. Rev. Stat. § 565.012.3(1) (1978) (current version Mo. Rev. Stat. § 565.032.3(1) (Supp. 1991)). App. to Pet. for Cert. A–86 to A–87. Defense counsel sought this instruction even though she repeatedly asserted that she would not try to show that Lashley lacked a criminal past. *Id.*, at A–84, A–86. At the same time, she moved for an order prohibiting the State from cross-examining defense witnesses as to Lashley's juvenile record. *Id.*, at A–83, A–84. Such questioning may not have been permissible under Missouri law. See Mo. Rev. Stat. § 211.271 (1986). In any event, the judge did not expressly rule on the latter motion. See *Lashley* v. *Armontrout*, 957 F. 2d 1495, 1501, n. 1 (1992) ("[T]he trial court was not called upon to rule in respect to the admissibility of defendant's juvenile record"). The judge did indicate, however, that Lashley would not be entitled to the requested instruction without supporting evidence. App. to Pet. for Cert. A–84, A–87.

Perhaps Lashley's attorneys chose not to make the necessary proffer because they feared that the prosecutor would be permitted to respond with evidence that Lashley had engaged in criminal activity as a juvenile. One of the attorneys so testified in a state collateral proceeding. Tr. 29 (Apr. 10, 1985). Or perhaps defense counsel sought to avoid opening the door to evidence that Lashley had committed other crimes as an adult. As the Missouri Supreme Court observed, the record indicates that, following his arrest, Lashley confessed to committing several other crimes after

attaining adult status.*  *State* v. *Lashley,* 667 S. W. 2d 712, 716 (Mo.), cert. denied, 469 U. S. 873 (1984); see also 667 S. W. 2d, at 717 (Blackmar, J., concurring in part and dissenting in part).

Whatever their reasons, Lashley's lawyers presented no proof that he lacked a significant criminal history. Nor did the prosecutor submit any evidence that would support the mitigating circumstance. The trial judge refused to give the jury the "no significant history of prior criminal activity" instruction. The Missouri Supreme Court affirmed. It reasoned that Missouri law requires mitigating circumstance instructions to be supported by some evidence, see, *e. g., State* v. *Battle,* 661 S. W. 2d 487, 492 (Mo. 1983), cert. denied, 466 U. S. 993 (1984); see also *State* v. *Williams,* 652 S. W. 2d 102, 114 (Mo. 1983), and none was offered here. *State* v. *Lashley, supra,* at 715–716.

Lashley filed a petition for a writ of habeas corpus in the United States District Court for the Eastern District of Missouri. He alleged that the trial judge's failure to give the requested instruction violated due process. The District Court dismissed the claim. *Lashley* v. *Armontrout,* No. 87–897C(2) (ED Mo., June 9, 1988). A divided panel of the Court of Appeals for the Eighth Circuit, however, granted

---

*At the guilt phase of the trial, defense counsel moved to exclude "some confessions regarding 7 other crimes," including burglary, robbery, and stealing. Tr. 425 (Jan. 27, 1982). The motion was made not on the ground that the crimes were connected to the charged offense, cf. *post,* at 280, n. 1, or that they were committed while Lashley was a juvenile, but because they were "extremely prejudicial" and "[ir]relevant" to Lashley's guilt or innocence of the murder. Motion *in Limine,* Record 143 (Jan. 21, 1982). In a pretrial conference, defense counsel specifically stated that at least one of the crimes had been committed "a week or two" before the murder—that is, when Lashley was already an adult. Tr. 425 (Jan. 27, 1982). The presentence report contains additional evidence. Under the heading "Adult Arrest Record," the report indicates that Lashley was arrested for three offenses (robbery, burglary, and stealing) the day after his arrest for the present crime. Missouri Dept. of Social Services, Div. of Probation and Parole 2 (Mar. 23, 1982).

relief. *Lashley* v. *Armontrout,* 957 F. 2d 1495 (1992). The Court of Appeals thought that the trial judge's ruling violated the Eighth Amendment under *Lockett* v. *Ohio,* 438 U. S. 586 (1978). In the majority's view, *"Lockett* requires the State—which is in a peculiarly advantageous position to show a significant prior criminal history, if indeed Lashley has such a history—to come forward with evidence, or else the court must tell the jury it may consider the requested mitigating circumstance." 957 F. 2d, at 1502. The court held that "the lack of any evidence whatever of Lashley's prior criminal activity entitled [him] to the requested instruction." *Ibid.*

As Judge Fagg explained in dissent, see *id.,* at 1502–1504, the majority plainly misread our precedents. We have held that the sentencer must be allowed to consider in mitigation "any aspect of a defendant's character or record and any of the circumstances of the offense *that the defendant proffers* as a basis for a sentence less than death." *Lockett, supra,* at 604 (plurality opinion) (emphasis added). Accord, *Penry* v. *Lynaugh,* 492 U. S. 302, 317 (1989); *Eddings* v. *Oklahoma,* 455 U. S. 104, 110 (1982); see also *Penry, supra,* at 327 ("[S]o long as the class of murderers subject to capital punishment is narrowed, there is no constitutional infirmity in a procedure that allows a jury to recommend mercy based on the mitigating evidence *introduced by a defendant"* (emphasis added)). But we never have suggested that the Constitution requires a state trial court to instruct the jury on mitigating circumstances in the absence of any supporting evidence.

On the contrary, we have said that to comply with due process state courts need give jury instructions in capital cases only if the evidence so warrants. See *Hopper* v. *Evans,* 456 U. S. 605, 611 (1982). And, answering a question expressly reserved in *Lockett,* we recently made clear that a State may require the defendant "'to bear the risk of nonpersuasion as to the existence of mitigating circumstances.'"

*Walton* v. *Arizona*, 497 U. S. 639, 650 (1990) (plurality opinion) (quoting *Lockett, supra,* at 609, n. 16); see also 497 U. S., at 669–673 (SCALIA, J., concurring in part and concurring in judgment) (rejecting *Lockett*). In *Walton* we rejected a challenge to a state statute that imposed on capital defendants the burden of establishing the existence of mitigating circumstances by a preponderance of the evidence—a higher evidentiary standard, we note, than Missouri has adopted. Discerning no "constitutional imperative . . . that would require the [sentencer] to consider the mitigating circumstances claimed by a defendant unless the State negated them," 497 U. S., at 650, we concluded that "[s]o long as a State's method of allocating the burdens of proof does not lessen the State's burden . . . to prove the existence of aggravating circumstances, a defendant's constitutional rights are not violated by placing on him the burden of proving mitigating circumstances sufficiently substantial to call for leniency," *ibid.*

Even prior to *Walton,* other lower courts rejected arguments similar to Lashley's. For example, in *State* v. *Fullwood,* 323 N. C. 371, 373 S. E. 2d 518 (1988), vacated and remanded on other grounds, 494 U. S. 1022 (1990), the court held that the trial judge did not err by refusing to submit to the jury a "no significant history of prior criminal activity" instruction where neither the defendant nor the State introduced evidence to support it. 323 N. C., at 394, 373 S. E. 2d, at 532; see also *Hutchins* v. *Garrison,* 724 F. 2d 1425, 1436–1437 (CA4 1983) (where defendant did not request a criminal history mitigating instruction and the record did not support it, any error resulting from failure to give the instruction was an error of state law only), cert. denied, 464 U. S. 1065 (1984). In *DeLuna* v. *Lynaugh,* 890 F. 2d 720 (1989), the Fifth Circuit held that a capital defendant was not entitled to a mitigating instruction under *Penry* because he had made a "tactical decision" not to introduce supporting evidence that would have "opened the door to the introduction in evi-

dence of a prior criminal record." 890 F. 2d, at 722. Accord, *May* v. *Collins*, 904 F. 2d 228, 232 (CA5 1990), cert. denied, 498 U. S. 1055 (1991).

In short, until the Court of Appeals' decision in this case, it appears that lower courts consistently applied the principles established by *Lockett* and its progeny. Today we make explicit the clear implication of our precedents: Nothing in the Constitution obligates state courts to give mitigating circumstance instructions when no evidence is offered to support them. Because the jury heard no evidence concerning Lashley's prior criminal history, the trial judge did not err in refusing to give the requested instruction.

We are not persuaded by the Court of Appeals' assertion that the State was uniquely situated to prove whether or not Lashley had a significant prior criminal history. As an initial matter, Missouri law does not demand *proof* that a mitigating circumstance exists; it requires only some supporting evidence. Lashley acknowledged in his federal habeas petition that his attorneys could have put forward some evidence that he lacked a significant prior criminal history; indeed, he contended that they were constitutionally ineffective for failing to do so. App. to Pet. for Cert. A–71. There is no reason to suppose, as the dissent suggests, *post*, at 288, that Lashley would be required to testify in order to receive the mitigating instruction. Before the state trial court, the prosecution submitted that testimony by Lashley's acquaintances would suffice. App. to Pet. for Cert. A–83. On these facts, we cannot say that the State unfairly required Lashley to prove a negative.

Nor are we convinced that, as a general rule, States are better positioned than criminal defendants to adduce evidence of the defendants' own criminal history. While the prosecution may have ready access to records of crimes committed within its own jurisdiction, the same may not be true when the defendant has committed crimes in other jurisdictions, perhaps over a period of many years. And any pre-

sentence report that is created is available to both the government and the defense. In this case, Lashley has not suggested that he was unable to offer his presentence report as evidence that his prior criminal record was insignificant. Moreover, the statutory mitigating circumstance refers not to arrests or convictions, but more broadly to "criminal activity." To the extent that this includes criminal conduct that has not resulted in formal charges, no one is better able than the defendant to make the required proffer.

## II

The dissent contends that this case is not about the requirements of *Lockett* at all, but about the "presumption of innocence." *Post,* at 281. The question the dissent raises is indeed "novel," *ibid.;* it apparently was not raised in either the District Court or the Court of Appeals, and it was not presented to this Court. Nor does the dissent's argument compel a different result. To be sure, we have said that "[t]he presumption of innocence, although not articulated in the Constitution, is a basic component of a fair trial under our system of criminal justice." *Estelle* v. *Williams,* 425 U. S. 501, 503 (1976). The presumption operates at the guilt phase of a trial to remind the jury that the State has the burden of establishing every element of the offense beyond a reasonable doubt. *Taylor* v. *Kentucky,* 436 U. S. 478, 484, n. 12 (1978). But even at the guilt phase, the defendant is not entitled automatically to an instruction that he is presumed innocent of the charged offense. *Kentucky* v. *Whorton,* 441 U. S. 786, 789 (1979) *(per curiam).* An instruction is constitutionally required only when, in light of the totality of the circumstances, there is a "'genuine danger'" that the jury will convict based on something other than the State's lawful evidence, proved beyond a reasonable doubt. *Ibid.* (quoting *Taylor, supra,* at 488).

Once the defendant has been convicted fairly in the guilt phase of the trial, the presumption of innocence disappears.

See *Herrera* v. *Collins*, 506 U. S. 390, 399 (1993); *id.*, at 443 (BLACKMUN, J., dissenting). We have not considered previously whether a presumption that the defendant is innocent of other crimes attaches at the sentencing phase. But even assuming that such a presumption does attach, Lashley was not entitled to a "presumption of innocence" instruction. Under our precedents, the instruction would have been constitutionally required only if the circumstances created a genuine risk that the jury would conclude, from factors other than the State's evidence, that the defendant had committed other crimes. See, *e. g., Whorton, supra*, at 788–789. Lashley does not contend that any such circumstances existed in this case. As the dissent acknowledges, *post*, at 281, the record before the jury was completely silent on the question whether Lashley had committed prior offenses. The jury was specifically instructed that the State had the burden of proving the existence of any aggravating circumstances "beyond a reasonable doubt." Instructions Nos. 20–21, Record 77, 79 (Jan. 29, 1982). Nothing disturbed the presumption that Lashley was a first offender.

The "circumstances" on which the dissent relies, *post*, at 284–285, had no bearing on the jurors' perceptions. Lashley's age and the sentence to which he was subject were irrelevant to the question whether the jury might conclude improperly that he was a repeat offender. The dissent assigns special weight to the fact that defense counsel may have decided not to introduce evidence concerning Lashley's prior criminal history for fear that the State would introduce Lashley's juvenile record. We note that, had the trial court improperly admitted evidence of Lashley's juvenile record, defense counsel could have objected and preserved the issue for appeal. In any event, the only impact that defense counsel's decision not to make the necessary proffer could have had on the *jury* was to deprive it of possible testimony that Lashley lacked a criminal history. Without such testimony, the record before the jury was still silent on the question of Lashley's

criminal past. Thus, assuming, *arguendo*, that a presumption of innocence did attach at Lashley's sentencing, under *Whorton* he was not constitutionally entitled to a "presumption of innocence" instruction.

Lashley's motion for leave to proceed *in forma pauperis* and the petition for a writ of certiorari are granted. The judgment of the Court of Appeals is reversed.

*It is so ordered.*

JUSTICE STEVENS, with whom JUSTICE BLACKMUN joins, dissenting.

Thirty days after his 17th birthday, respondent entered his cousin's home, murdered her, and stole about $15. He was promptly arrested and made a series of confessions to the police. A portion of one of those confessions apparently referred to other crimes, but that portion was not admitted into evidence and is not in the record. Although it seems probable that several of those "other" crimes were committed in connection with the murder, a comment by respondent's counsel in a pretrial conference indicates that one of them involved the same victim's house "a week or two beforehand."[1] The record tells us nothing about the manner in which that specific statement was elicited, the seriousness of the incident, the dates when that or any of the other incidents occurred, or even whether counsel's description of the statement was accurate. Yet that one vague reference may now explain the Court's willingness to reinstate re-

---

[1] In support of a motion *in limine* respondent's counsel asked the court to exclude his client's confession of crimes unrelated to the offense on trial. He argued that the State had "extracted some confessions regarding 7 other crimes, a burglary second, a robbery first, stealing under, and I think it was a few more for a total of 7. One of the ones Lashley confessed to did involve the same victim's house. It was a week or two beforehand. My motion in limine is asking the Court to sustain my motion of course forbidding Mr. Bauer [the prosecutor] to bring these up." Tr. 425 (Jan. 27, 1982).

spondent's death sentence without hearing argument on the merits of the novel and important constitutional question that the case presents. That question is whether the presumption of innocence (uncontradicted in any way by the prosecution) supports an instruction to the jury at sentencing that the capital defendant's lack of a significant criminal history is a factor mitigating against its imposition of the death penalty. The Court acknowledges that the defendant's testimonial assertion of innocence *would* support the instruction, see *ante*, at 277; it fails to recognize that the presumption of innocence does so as well.

The question arises because the record on which the jury relied in imposing the death sentence contains no evidence of any criminal activity by respondent except the serious felony for which he has been convicted and sentenced. Speculation by appellate judges, see *ante*, at 273–274, about a matter that was neither available to the sentencing authority nor mentioned by the State in its petition in this Court is not a substitute for admissible evidence presented in an adversary proceeding.[2] Speculation about his juvenile record is impermissible; state law prohibits any use of such evidence in adult

---

[2] Although the majority is willing to rely on these unfounded remarks, see *ante*, at 273–274, the State itself did not present any such evidence at respondent's trial or sentencing, and it has not suggested to us (or to any lower court) that respondent actually committed a single criminal act between his 17th birthday and the murder of his cousin.

As the Court notes, *ante*, at 274, n., respondent argued both that this statement was "[ir]relevant," and that "to admit the statements or written confessions into evidence would be extremely prejudicial . . . ." Motion *in Limine*, Record 143 (Jan. 21, 1982). Respondent was correct, of course, about the improper prejudice that would have resulted from admitting statements about alleged crimes with which he was never charged and on which the State has never relied in arguing that the instruction in question was properly withheld. It is unfortunate that respondent was spared such prejudice in the trial court only to have it reapplied (under the Court's reading of a stray comment in the record) here.

criminal proceedings.[3]    Accordingly, as the case comes to us, the record is silent on the question whether respondent led an entirely blameless life prior to this offense.

Missouri's capital sentencing statute provides that the absence of any significant history of prior criminal activity is a circumstance militating against the imposition of the death penalty.[4]    In Missouri, therefore—as in the many States with the same statutory mitigating factor—the jury should be so instructed when the record contains no evidence of any prior record of criminal activity.

The legal basis for the Court's summary disposition of this case is the general rule that a trial judge's instructions to the jury must normally relate to evidence in the record.    That general rule, however, has no application to an instruction on the presumption of innocence in an ordinary criminal trial. In my opinion, the general rule is equally inapplicable in the capital sentencing process when the defendant requests an

---

[3] The relevant Missouri statute provides:

"1. No adjudication by the juvenile court upon the status of a child shall be deemed a conviction nor shall the adjudication operate to impose any of the civil disabilities ordinarily resulting from conviction nor shall the child be found guilty or be deemed a criminal by reason of the adjudication.

.        .        .        .        .

"3. After a child is taken into custody as provided in section 211.131, all admissions, confessions, and statements by the child to the juvenile officer and juvenile court personnel and all evidence given in cases under this chapter, as well as all reports and records of the juvenile court *are not lawful or proper evidence* against the child and *shall not be used for any purpose whatsoever in any proceeding, civil or criminal,* other than proceedings under this chapter."    Mo. Rev. Stat. § 211.271 (1978) (emphasis added).

[4] Missouri Rev. Stat. § 565.012.3(1) (1978) (current version Mo. Rev. Stat. § 565.032.3(1) (Supp. 1991)) establishes the following as a statutory mitigating factor:

"The defendant ha[d] no significant history of prior criminal activity."

Even if the statute did not so provide, our holding in *Lockett* v. *Ohio,* 438 U.S. 586 (1978), would require that consideration be given to that mitigating factor.

instruction explaining the statutory mitigating circumstance at issue in this case.

I

It has been settled for almost a century that the presumption of innocence, when uncontradicted, is an adequate substitute for affirmative evidence. In 1895 the Court held that refusing to give an instruction on the presumption of innocence was reversible error, explaining that "this presumption is an instrument of proof created by the law in favor of one accused, whereby his innocence is established until sufficient evidence is introduced to overcome the proof which the law has created." *Coffin* v. *United States*, 156 U. S. 432, 459. A few years later, in his landmark treatise on evidence, Professor Thayer, while noting that a presumption is not itself evidence, concluded:

> "What appears to be true may be stated thus:—
> "1. A presumption operates to relieve the party in whose favor it works from going forward in argument or evidence.
> "2. It serves therefore the purposes of a *prima facie* case, and in that sense it is, temporarily, the substitute or equivalent for evidence." J. Thayer, A Preliminary Treatise on Evidence at the Common Law, Appendix B, p. 575 (1898) (hereinafter Thayer).[5]

The presumption of innocence plays a unique role in criminal proceedings. As Chief Justice Burger explained in his opinion for the Court in *Estelle* v. *Williams*, 425 U. S. 501 (1976):

---

[5] "A presumption may be called 'an instrument of proof,' in the sense that it determines from whom evidence shall come, and it may be called something 'in the nature of evidence,' for the same reason; or it may be called a substitute for evidence, and even 'evidence'—in the sense that it counts at the outset, for evidence enough to make a *prima facie* case." Thayer 576.

"The presumption of innocence, although not articulated in the Constitution, is a basic component of a fair trial under our system of criminal justice. Long ago this Court stated:

" 'The principle that there is a presumption of innocence in favor of the accused is the undoubted law, axiomatic and elementary, and its enforcement lies at the foundation of the administration of our criminal law.' *Coffin* v. *United States,* 156 U. S. 432, 453 (1895)." *Id.,* at 503.

The failure to instruct the jury on the presumption may violate the Due Process Clause of the Fourteenth Amendment even when a proper instruction on the prosecution's burden of proving guilt beyond a reasonable doubt has been given. *Taylor* v. *Kentucky,* 436 U. S. 478 (1978). Whether the omission amounts to a constitutional violation in a noncapital case depends on "the totality of the circumstances," *Kentucky* v. *Whorton,* 441 U. S. 786, 789 (1979). In my judgment, the instruction should always be given in a capital case.

That conclusion is not essential to my appraisal of the capital case before us today, however, because the totality of circumstances here included respondent's age, the sentence to which he was subject, and—of special importance—the trial judge's erroneous refusal to prohibit cross-examination about his juvenile record. As Chief Judge Arnold explained:

"[T]rial counsel made a reasonable effort to introduce [affirmative evidence showing that petitioner had no significant criminal history] but was prevented from doing so by an incorrect ruling of the state trial court. The court told counsel that if she insisted on offering evidence that Lashley had no criminal record, it would permit the state to counter this evidence by showing that petitioner had committed juvenile offenses. This ruling

was flatly contrary to state law." *Lashley* v. *Armontrout*, 957 F. 2d 1495, 1500, n. 1 (CA8 1992).[6]

This erroneous ruling by the trial judge unquestionably explains why the record contains no specific testimony about respondent's prior criminal history. Even though due process may not *automatically* entitle a defendant to an instruction that he is presumed innocent of other offenses at the penalty phase of the trial, under *Whorton, supra,* the instruction should certainly be given when a trial court error is responsible for the absence of evidence supporting the instruction.

The failure to instruct the jury on the presumption of innocence at the guilt phase of respondent's trial—whether or not respondent had presented any evidence of his innocence—would have been constitutional error requiring reversal of his conviction. Under our holding in *Lockett* v. *Ohio,* 438 U. S. 586 (1978), the comparable refusal in this case was also constitutional error requiring the vacation of respondent's death sentence.[7] The Court of Appeals, therefore, properly set aside a sentence of death imposed by a

---

[6] The other two members of the panel did not agree with Chief Judge Arnold's opinion that this error constituted "a separate and distinct violation of the principle of *Lockett* v. *Ohio,* 438 U. S. 586 . . . (1978)," 957 F. 2d, at 1500–1501, n. 1, but they did not question his interpretation of state law.

[7] We have made it clear that procedural safeguards constitutionally required at the guilt stage of a capital trial are also required at the penalty stage. *Gardner* v. *Florida,* 430 U. S. 349, 358 (1977) (plurality opinion) ("[I]t is now clear that the sentencing process, as well as the trial itself, must satisfy the requirements of the Due Process Clause"); *Estelle* v. *Smith,* 451 U. S. 454 (1981) (Fifth Amendment privilege against self-incrimination applies at capital sentencing); *Bullington* v. *Missouri,* 451 U. S. 430 (1981) (Double Jeopardy Clause applies at capital sentencing). In *Bullington* we actually considered the same Missouri statutes that regulated *this* respondent's capital sentencing, and held that "[b]y enacting a capital sentencing procedure that resembles a trial on the issue of guilt or innocence, however, Missouri *explicitly requires* the jury to determine whether the prosecution has 'proved its case.'" *Id.,* at 444 (emphasis in original).

jury uninformed that the state legislature had expressly authorized it to withhold that sentence because the defendant had no prior criminal record.[8]

## II

The mitigating factor in question corresponds precisely to the presumption of innocence. When the trial record reveals no prior criminal history at all the presumption serves as "a *prima facie* case, and in that sense it is, temporarily, the substitute or equivalent for evidence," Thayer 575, that a criminal defendant is blameless in spite of his indictment, and that even after conviction of one crime, he is presumptively innocent of all other crimes. The State cannot refute the presumption of innocence at the guilt phase of the trial without presenting any evidence that the defendant committed the act for which he was indicted; similarly, it has no basis for objecting to a mitigating instruction on the absence of a prior criminal history if it has done nothing to rebut the *prima facie* case established by the presumption of innocence at the sentencing phase of the trial.[9]

---

[8] It is true that respondent's claim of constitutional error focused on the trial court's refusal to prohibit cross-examination about his juvenile record and did not mention the presumption of innocence. Similarly, the Court of Appeals relied on the rationale of *Lockett* v. *Ohio*, 438 U. S. 586 (1978), without mentioning the presumption. Nevertheless, our jurisprudence firmly establishes that it is appropriate to *affirm* a judgment on a ground that was not raised below. It is manifestly unjust to *reverse* a correct judgment and to reinstate the death penalty simply because the basis for the judgment was not adequately articulated in earlier proceedings.

[9] As the Court correctly notes, just as we have held generally that refusing to give an instruction on the presumption of innocence is not always reversible error, we have also held as a general matter that a capital defendant may be required to present evidence supporting a requested instruction on a statutory mitigating factor. *Ante,* at 275–276. We have even held that the State may require a capital defendant to support a requested jury instruction with a preponderance of the evidence. *Walton* v. *Arizona,* 497 U. S. 639 (1990). But we have never held that a defendant with a presumptively clean record must present additional evidence in sup-

In this case, as the Court expressly acknowledges, nothing in the record "disturbed the presumption that Lashley was a first offender." *Ante*, at 279. There was no danger that the "jury might conclude improperly that he was a repeat offender." *Ibid.* What was lacking, however, was advice to the jury that Missouri law draws a distinction between first offenders and repeat offenders and provides that membership in one class rather than the other shall be considered a mitigating fact no matter how serious the offense committed by the defendant may be. Failure to advise the jury about the mitigating effect of his status as first offender is just as unfair as the failure to advise the jury that it should consider evidence offered by a defendant "as *mitigating* evidence and that it could give mitigating effect to that evidence in imposing sentence." *Penry* v. *Lynaugh*, 492 U. S. 302, 320 (1989) (emphasis in original).[10]

---

port of that record to receive an instruction about it. Whether the presumption that a defendant—even a convicted capital defendant—is innocent of all other crimes is viewed as evidence in his favor or merely as a rule of evidence imposing a burden of proof on the State, it means that the State must offer *something* to disprove it. Because the State in this case offered *nothing* to disprove it, the instruction was constitutionally required.

[10] "We note that the Oklahoma death penalty statute permits the defendant to present evidence 'as to any mitigating circumstances.' Okla. Stat., Tit. 21, § 701.10 (1980). *Lockett* requires the sentencer to listen." *Eddings* v. *Oklahoma*, 455 U. S. 104, 115, n. 10 (1982). "I disagree with the suggestion in the dissent that remanding this case may serve no useful purpose. Even though the petitioner had an opportunity to present evidence in mitigation of the crime, it appears that the trial judge believed that he could not consider some of the mitigating evidence in imposing sentence. In any event, we may not speculate as to whether the trial judge and the Court of Criminal Appeals actually considered all of the mitigating factors and found them insufficient to offset the aggravating circumstances, or whether the difference between this Court's opinion and the trial court's treatment of the petitioner's evidence is 'purely a matter of semantics,' as suggested by the dissent. *Woodson* [v. *North Carolina*, 428 U. S. 280 (1976)] and *Lockett* require us to remove any legitimate basis for finding ambiguity concerning the factors actually considered by the trial court." *Id.*, at 119 (O'CONNOR, J., concurring).

Because "no one is better able than the defendant to make the required proffer," *ante,* at 278, the Court considers it fair to require him to attest to his own innocence of any criminal history before the jury may be allowed to rely on the mitigating circumstance when it considers putting him to death. This suggestion is inconsistent with our refusal to allow the capital sentencing process to burden the defendant's Fifth Amendment privilege against self-incrimination.[11]   It obviously would have been constitutional error for the prosecutor or the judge to comment on the defendant's failure to testify at the guilt or sentencing phase of the trial; it is equally wrong to deny him an otherwise appropriate mitigating instruction because he failed to testify.

Admittedly, my analysis of the case enables the respondent to obtain a double benefit from his youth.   That he was barely 17 years old when he committed the offense is itself a mitigating circumstance; it also serves to shield any earlier misbehavior from scrutiny when his life is at stake.   I believe, however, that such a double benefit is entirely appropriate when a State seeks to take the life of a young person. To deny that benefit undermines important protections that the law has traditionally provided to youthful offenders because of their lesser moral culpability and greater potential for rehabilitation.   It is doubly disturbing that the Court acts summarily in this case, thus expediting the execution of a defendant who, I firmly believe, should not be eligible for

---

[11] The Fifth Amendment privilege against self-incrimination, applied against the States through the Fourteenth Amendment in *Malloy* v. *Hogan,* 378 U. S. 1 (1964), clearly applies at the sentencing phase of a capital trial.   *Estelle* v. *Smith,* 451 U. S., at 463 ("Given the gravity of the decision to be made at the penalty phase, the State is not relieved of the obligation to observe fundamental constitutional guarantees.   See *Green* v. *Georgia,* 442 U. S. 95, 97 (1979); *Presnell* v. *Georgia,* 439 U. S. 14, 16 (1978); *Gardner* v. *Florida,* 430 U. S. 349, 357–358 (1977) (plurality opinion)").

the death penalty at all. See *Thompson* v. *Oklahoma,* 487 U. S. 815, 830–831 (1988) (plurality opinion).

I respectfully dissent.