IN THE

TENTH COURT OF APPEALS




 
 
 
 
 
 
 


 



No. 10-06-00171-CR

 

Larrick Decarl Curry,

                                                                      Appellant

 v.

 

The State of Texas,

                                                                      Appellee

 

 



From the 85th District Court

Brazos County, Texas

Trial Court No. 0602513-CRF-85

 



CONCURRING Opinion










 

          The majority’s holding that the
confrontation clause applies to a suppression hearing is not necessary for the
disposition of this appeal.  Unless an author is simply trying to create the
law as they want it to be, there is no reason to address that aspect of the
case in this appeal.  It is, therefore, dicta.  The majority’s holding that the
statements were not testimonial in nature is the only holding that is necessary
because that holding makes it entirely unnecessary to decide the issue of
whether the confrontation clause applies to a suppression hearing.[1]

          Additionally, the majority’s effort to
make their unnecessary holding economically sound is Enron Economics.[2] 
The majority’s argument goes as follows:

In part as a matter of judicial economy, Texas law allows a defendant to appeal the denial of a motion to suppress after a guilty
plea.  If confrontation rights are not guaranteed at a pretrial suppression
hearing and may only be exercised at a trial on the merits, the purpose of this
law may be undone.

 

Maj. op. at 9, ___ S.W.3d ___, ___ (Tex. App.—Waco 2007, no pet. h.) (emphasis added).

          Whatever judicial economy has been
achieved by this law has been achieved under the existing law, and not the law
that the majority wants to now write.  So to suggest that the new law they are trying
to impose upon the system is more economical than the existing law poses two
problems.  First, the economics of the law regarding the appeal of a
suppression hearing is the result of a legislative debate, not from within the
mind of one person.[3] 
And second, even if maintaining the law as it was when that law was written
becomes less economical for some reason, it should be a legislative act to
modify the procedure as needed to accomplish the competing objectives after
debate in the legislative process, not this Court’s.[4]

          Furthermore, in their economic
analysis, the majority has failed to place upon the scale all of the costs to
be considered.  The study which would need to be made to support their
conclusion is a comparison of:

1.                 
The cost of the trials which
result only from a defendant who does not plead guilty after a motion to
suppress is denied because of the absence of a right of confrontation at the
suppression hearing so that the defendant can relitigate the propriety of that
decision during the trial at which the defendant can confront the witnesses
relevant to the suppression issue; versus

 

2.                 
The cost of bringing to
every suppression hearing every witness who has personal knowledge of any
evidence necessary or helpful to determine the suppression issue.

 

          Because there are many thousands of
suppression hearings across this State in any year and only a small fraction of
those are challenged, I cannot conclude that the first alternative is more
economical than the later as proffered by the majority.  Further, that analysis
and weighing is much more relevant to a legislative analysis and resolution of
the issue than a judicial one.

          Ultimately, the question is whether
the constitutionally guaranteed right of confrontation applies in a pre-trial suppression
hearing.  I find the majority’s analysis unpersuasive that it is a
constitutionally required floor at a suppression hearing.  It is certainly
something that could be required, but as long as the defendant has the right to
confrontation at trial, at which the defendant can relitigate the suppression
ruling in front of the fact finder, like many other constraints upon when
constitutional guarantees are available, I do not believe that the right of
confrontation is constitutionally required at a suppression hearing.  In this
regard, I agree with the thoughtful and well-reasoned opinion of retired
Justice Sue Lagarde (the panel also included Justices Francis and Lang) in Vanmeter
v. State, 165 S.W.3d 68 (Tex. App.—Dallas 2005, pet. ref’d).  While the
majority’s purported holding in this appeal is dicta, it is in direct conflict
with Vanmeter.  I do not join the Court’s opinion as noted above, but
concur in the Court’s judgment.

 

                                                          TOM
GRAY

                                                          Chief
Justice

 

Concurring
opinion delivered and filed May 16, 2007

Publish









[1] 
For a discussion of the methodology of
addressing Crawford issues, including whether a statement is testimonial
in nature, see Cathy Cochran, Criminal Law Case Update; Thirtieth Annual Baylor General Practice
Institute, April 20, 2007.





[2] 
By this I mean it is based on nothing more
than what the majority wants it to be and is not based upon the reality or a
study of any kind.

 





[3] 
The lengthy description in footnote 2 of
the majority opinion adequately describes the legislative history of the
development and current version of the rule, first through the legislature and
more recently through the Court of Criminal Appeals’ legislative process under
its rule-making authority.

 





[4] 
This legislative process would now be
under the rule-making authority of the Court of Criminal Appeals.  See
FN3.








pplicable to the case” generally
includes statutes which apply to the facts of a particular case.  See e.g.
Huizar, 12 S.W.3d at 484 (“[art. 37.07, § 3(a)’s] requirement that the jury
be satisfied of the defendant’s culpability in the extraneous offenses and bad
acts is thus ‘law applicable to the case’”); Arline v. State, 721 S.W.2d
348, 352 n.4 (Tex. Crim. App. 1986) (“a statutorily defined word or phrase must
be included in the charge as part of the ‘law applicable to the case’”); Goodman
v. State, 8 S.W.3d 362, 364 (Tex. App.—Austin 1999, no pet.) (“When a
witness who is an accomplice as a matter of law gives testimony to which
article 38.14 applies, the statutorily required instruction is ‘law applicable
to the case.’”).

          Sometimes, the common law serves as a
basis for the “law applicable to the case.”  See Gray v. State, 152
S.W.3d 125, 131 (Tex. Crim. App. 2004) (“Under our caselaw, this charge[2]
instructed the jury on the law applicable to the case.”).

          However, defensive issues (even if
statutorily-defined) do not constitute the “law applicable to the case” unless
the defendant makes them so by presenting evidence to support their submission
in the charge and by requesting their inclusion in the charge.  See Huizar,
12 S.W.3d at 484 n.7 (citing Posey v. State, 966 S.W.2d 57, 62 (Tex.
Crim. App. 1998)).  In the same manner, limiting instructions regarding
evidence of extraneous offenses do not constitute the “law applicable to the
case” unless such instructions are requested by the party seeking to restrict
the jury’s consideration of the evidence to its admissible purpose.  See
Hammock v. State, 46 S.W.3d 889, 895 (Tex. Crim. App. 2001).

          These two categories of issues and
instructions for which requests are required rest largely on strategic choices
made by defense counsel.  Defense counsel must familiarize himself with the
facts of the client’s case, identify any particular defenses which may be
applicable to the facts, and develop a strategy to present the applicable
defenses at trial.  With regard to evidence of extraneous offenses, effective
counsel will obtain pre-trial notice of those extraneous offenses which the
State intends to prove at trial.  See Loredo v. State, 157 S.W.3d 26, 29-30
(Tex. App.—Waco 2004, pet. ref’d).  Counsel must then plan a trial strategy to
confront this evidence and be prepared to promptly request an instruction from
the court limiting the evidence to its admissible purpose.  See Hammock,
46 S.W.3d at 893-94.

          Unlike these two categories of issues
and instructions which will vary depending on the facts of the case, the
requirement that extraneous offenses admitted at the guilt-innocence phase be
shown beyond a reasonable doubt is a common law requirement applicable to any
case in which evidence of extraneous offenses is admitted.  See Varelas,
45 S.W.3d at 631.  The foundation for this requirement is quite similar to that
for extraneous offenses admitted at punishment.  Compare id. (jurors “are
not to consider extraneous act evidence unless they believe beyond a reasonable
doubt that the defendant committed that act”) with Huizar, 12 S.W.3d at
484 (“[E]vidence [of extraneous bad acts and offenses] may not be considered
in assessing punishment until the fact-finder is satisfied beyond a reasonable
doubt that [such acts and offenses] are attributable to the defendant.”).

          In fact, it appears that the common
law predating the enactment of the current version of article 37.07, section
3(a)(1) served as the source for the beyond-a-reasonable-doubt burden of proof
the Legislature incorporated in that statute.  See Edward L. Wilkinson, Punishment
Evidence: Grunsfeld Ten Years Later, 35 St. Mary’s L.J. 603, 667-68 &
n.363 (2004) (citing Mitchell v. State, 931 S.W.2d 950, 954 (Tex. Crim. App. 1996) (plurality)).

          In Mitchell, a plurality of the
Court of Criminal Appeals addressed the relationship between extraneous
offenses admitted at guilt-innocence and those admitted at punishment.

          [T]he use of extraneous offenses
during the punishment phase should be analogous to that of the guilt/innocence
phase of a trial regarding burden of proof.  The use of evidence of extraneous
offenses during the guilt/innocence phase is used to prove “motive,
opportunity, intent, preparation, plan, knowledge, identity, or absence of
mistake or accident.”  During the punishment phase, evidence of an extraneous
offense is offered to assist the trial court or the jury in determining
punishment.  When evidence of extraneous offenses has been offered, regardless
of the respective phase of a trial, the law requires that it be proved
beyond a reasonable doubt that the defendant committed the said extraneous
offenses, or is at least criminally responsible for its commission.

 

Mitchell, 931 S.W.2d at 954 (emphasis added).[3]

 

          “[T]he law requires” that extraneous
offenses be proved beyond a reasonable doubt.  Id.  This requirement is
more compelling during the guilt-innocence phase than during the punishment
phase because the defendant’s presumption of innocence is still intact.  Cf.
Delo v. Lashley, 507 U.S. 272, 278, 113 S. Ct. 1222, 1226, 122 L. Ed. 2d 620
(1993) (per curiam) (“Once the defendant has been convicted fairly in
the guilt phase of the trial, the presumption of innocence disappears.”).  Thus,
“[a] defendant is ‘entitled to be
tried on the accusations made in the State’s pleading and he should not be
tried for some collateral crime or for being a criminal generally.’”  Varelas,
45 S.W.3d at 630 (quoting Wilkerson v. State, 736 S.W.2d 656, 659 (Tex.
Crim. App. 1987)).  For this reason, it is imperative that the jury be
instructed that it cannot consider evidence of an extraneous offense unless the
jurors “believe beyond a reasonable doubt that the defendant committed that
act.”  See id. at 631.

          Accordingly, the requirement that
extraneous offense be proved beyond a reasonable doubt is the “law applicable
to the case” when evidence of extraneous offenses is admitted during the
guilt-innocence phase.  “As this was ‘law applicable to the case,’ appellant
was not required to make an objection or request . . . in order for the trial
court to instruct the jury” on this requirement.  See Huizar, 12 S.W.3d at
484; contra Rodriguez, 137 S.W.3d at 230-31.

          The First Court of Appeals has
suggested that there is a division among the intermediate courts of appeals on
this issue.  See Rodriguez, 137 S.W.3d at 231.  Although we agree that
the courts are divided on this issue, we believe the First Court misread some
of the opinions in question.  According to the First Court, the San Antonio and Dallas Courts have extended Huizar to the guilt-innocence charge,
while the Amarillo and Fourteenth Courts have (like the First Court) held that it
does not apply.

          The Amarillo and Fourteenth Courts
have reached the same conclusion as the First Court that a trial court is not
required to sua sponte submit a reasonable doubt instruction on
extraneous offenses in the guilt-innocence charge.  See Gilbert v. State,
2003 Tex. App. LEXIS 8158 at **11-12 (Tex. App.—Houston [14th Dist.] Sept. 23,
2003, no pet.) (mem. op.); Salazar v. State, 2002 Tex. App. LEXIS 1335
at **9-11 (Tex. App.—Amarillo Feb. 21, 2002, pet. ref’d) (not designated for
publication).

          The First Court suggests that the San Antonio Court has held the trial court does have such a sua sponte obligation.  See
Rodriguez, 137 S.W.3d at 231 (citing Chapa v. State, 2003 Tex. App. LEXIS 2091 at **3-5 (Tex. App.—San Antonio Mar. 12, 2003, pet. ref’d) (mem.
op.)).  However, the San Antonio Court agreed with the appellant in Chapa
only on the issue “that the trial court erred in failing to
instruct the jury as to reasonable doubt at the punishment phase.”  Chapa,
2003 Tex. App. LEXIS 2091 at *5 (emphasis added).  Although some of the
language employed by the San Antonio Court makes its discussion unclear, it
appears that the emphasis in that decision was on the necessity of a reasonable
doubt instruction in the punishment charge when evidence of extraneous offenses
was admitted during the guilt-innocence phase.  Id. at *4 (“We assume
that Huizar applies to extraneous offenses offered at both stages of
trial.”) (citing Allen v. State, 47 S.W.3d 47, 50-51 (Tex. App.—Fort
Worth 2001, pet. ref’d)).[4] 
Thus, it does not appear that the San Antonio Court has yet decided whether the
trial court must sua sponte submit a reasonable doubt instruction on
extraneous offenses in the guilt-innocence charge.

          The Dallas Court likewise has not
plainly stated that a trial court must do so.  In Carter, the Dallas Court reviewed a pro se response to an Anders brief[5]
which raised the issue in the context of an ineffective assistance of counsel
claim.  See Carter v. State, 2004 Tex. App. LEXIS 11539 at **1-3 (Tex. App.—Dallas Dec. 28, 2004, no pet.).  The Dallas Court concluded that this was an
“arguable issue” and remanded the appeal to the trial court for the appointment
of new counsel to file a brief on the merits.  Id. at **8-9.  The Dallas
Court suggested that new “counsel should discuss the lack of jury instructions
regarding the burden of proof for evidence of extraneous offenses introduced at
trial and any other grounds that might arguably support the appeal.”  Id.  However, the Dallas Court has not reached the merits of this issue.[6]

          We disagree with the courts which have
concluded that a trial court has no sua sponte duty to submit a
reasonable doubt instruction on evidence of extraneous offenses in the
guilt-innocence charge when such evidence is admitted.  We hold that the
requirement that extraneous offenses be proved beyond a reasonable doubt is the
“law applicable to the case” when evidence of extraneous offenses is admitted
during the guilt-innocence phase.  “As this was ‘law applicable to the case,’
appellant was not required to make an objection or request . . . in order for
the trial court to instruct the jury” on this requirement.  See Huizar,
12 S.W.3d at 484; contra Rodriguez, 137 S.W.3d at 231; Gilbert,
2003 Tex. App. LEXIS 8158 at *12; Salazar, 2002 Tex. App. LEXIS 1335 at
**10-11.

          Here, the evidence of extraneous
offenses was provided by the testimony of the sexual assault nurse examiner and
by the information about the allegations against Rodgers contained in the CPS
file, both of which referred to sexual assaults committed against the
complainants in a manner other than alleged in the indictment.[7] 
Because evidence of extraneous offenses was admitted during the guilt-innocence
phase, the trial court had a duty to sua sponte submit an instruction in
the guilt-innocence charge that this evidence could not be considered unless
the jurors were convinced beyond a reasonable doubt that Rodgers had committed
the extraneous offenses shown.  Because the court failed to submit such an
instruction, we must conduct a harm analysis.

          In Rodriguez, Gilbert,
and Salazar, the courts did not conduct harm analyses because they found
no error in the charge.  See Rodriguez, 137 S.W.3d at 231; Gilbert,
2003 Tex. App. LEXIS 8158 at *12; Salazar, 2002 Tex. App. LEXIS 1335 at
*10-11.  Conversely, the Texarkana Court, even though it did not hold that a
trial court has a sua sponte duty to submit a reasonable doubt instruction
in the guilt-innocence charge regarding evidence of extraneous offenses, did
review the record to see whether the appellant had suffered “egregious harm”
under Almanza[8]
because of the trial court’s failure to submit such an instruction.  See
Shanks v. State, 13 S.W.3d 83, 87 (Tex. App.—Texarkana 2000, no pet.).

          Rodgers concedes that because he failed
to object to this omission he cannot obtain reversal unless he suffered
“egregious harm.”  See Tex. Code
Crim. Proc. Ann. art. 36.19 (Vernon 1981); Shanks, 13 S.W.3d at
87; see also Almanza v. State, 686 S.W.2d 157, 171 (Tex. Crim. App.
1985).  The issue is whether Rodgers was harmed by the improper omission of the
instruction, not by the admission of evidence of extraneous offenses.  See
Ellison v. State, 86 S.W.3d 226, 228 (Tex. Crim. App. 2002).  In
evaluating harm, we consider “the entire jury charge, the state of the
evidence, including contested issues and weight of probative evidence, the
argument of counsel and any other relevant information revealed by the record
of the trial as a whole.”  Almanza, 686 S.W.2d at 171; Martin, 42
S.W.3d 196, 200 (Tex. App.—Fort Worth 2001, pet. ref’d); accord Ellison,
86 S.W.3d at 228.

          The evidence in question was admitted
through the testimony of the sexual assault nurse examiner and notations in the
CPS file.  However, the references to the extraneous offenses in the CPS file
were not mentioned in testimony.  Neither party otherwise emphasized the
extraneous offense evidence in testimony or argument, although Rodgers’s
counsel encouraged the jury to review the CPS file in support of the defense’s
theory that the complainants were exposed to inappropriate sexual behavior by
their mother and her paramours and were never sexually assaulted by Rodgers. 
The State responded by “inviting” the jury to look at the CPS file because the
State was “not going to hide anything.”  The State encouraged the jury to
consider the CPS file and see (1) the difficulties the complainants’ mother was
experiencing during the pertinent time periods, (2) the fact that none of the
allegations against her were substantiated, and (3) the fact that the children
were never removed from her care by CPS.

          Because Rodgers admitted the CPS file
in evidence without redaction or limitation, because neither party placed
emphasis on the evidence of extraneous offenses contained in the CPS file, and
because neither party made further reference to the brief testimony of the
sexual assault nurse examiner regarding extraneous offenses against M.E., we
cannot say that Rodgers suffered “egregious harm” because of the court’s
failure to submit a reasonable doubt instruction with regard to the evidence of
extraneous offenses admitted during the guilt-innocence phase.  See Martin,
42 S.W.3d at 201 (no egregious harm where “any consideration of those bad acts
by the jury in assessing punishment was at least partially prompted by defense
counsel’s urging”).  Accordingly, we overrule Rodgers’s second issue.

Punishment Charge

          Rodgers contends in his first issue
that he suffered egregious harm because the court failed to sua sponte
instruct the jury that it could not consider evidence of extraneous offenses in
assessing punishment unless the jury was satisfied that the extraneous offenses
had been proved beyond a reasonable doubt.

          The court erred by failing to sua
sponte submit a reasonable doubt instruction regarding evidence of
extraneous offenses in the punishment charge.  Ellison, 86 S.W.3d at
227; Huizar, 12 S.W.3d at 484.  Because there was no request or
objection, the only issue to be determined is whether this error caused Rodgers
to suffer “egregious harm.”  Ellison, 86 S.W.3d at 228; Martin,
42 S.W.3d at 200.

          Here, Rodgers’s 40-year sentences were
significantly less than the 70-year sentences sought by the State.  See
Tabor v. State, 88 S.W.3d 783, 789 (Tex. App.—Tyler 2002, no pet.) (no
egregious harm where jury sentenced defendant to 15-year sentence though State
argued for maximum 20-year sentence).  As with the guilt-innocence phase, the
prosecutor did not refer to the evidence of extraneous offenses in his
punishment argument.  See Bolden v. State, 73 S.W.3d 428, 432 (Tex. App.—Houston [1st Dist.] 2002, pet. ref’d) (no egregious harm where prosecutor did not
emphasize evidence of extraneous offense in argument); cf. Allen, 47
S.W.3d at 52-53 (no egregious harm even though prosecutor placed great emphasis
on evidence of extraneous offenses).  Finally, we note again that Rodgers was
the primary source for the evidence in question because he offered the CPS file
in evidence.  See Martin, 42 S.W.3d at 201 (no egregious harm where
defense counsel prompted jury to consider extraneous offenses).

            Accordingly,
we cannot say that Rodgers suffered egregious harm because of the court’s failure to submit a reasonable doubt instruction
in the punishment charge concerning evidence of extraneous offenses admitted
during the guilt-innocence phase.  Thus, we overrule Rodgers’s first issue.

We affirm the judgment.

 

FELIPE REYNA

Justice

Before Chief Justice
Gray,

Justice
Vance, and

Justice
Reyna

(Chief
Justice Gray concurring in the judgment without a separate opinion)

Affirmed

Opinion delivered and
filed October 26, 2005

Publish

[CRPM]









[1]
          This witness read the
complainant’s comments to the jury from the “sexual assault exam paperwork”
which was marked as State’s Exhibit No. 1 but never offered in evidence.





[2]
          The charge at issue in Gray
instructed the jury on the “synergistic effect” of multiple intoxicants in a
case in which the information alleged only alcohol as an intoxicant.  See
Gray v. State, 152 S.W.3d 125, 131 (Tex. Crim. App. 2004).





[3]
          As noted, Mitchell is a
plurality opinion.  The lead opinion in Mitchell was joined by only 1
judge; 1 judge did not participate in the decision; 3 judges concurred in the
judgment but not the opinion; and 3 judges dissented.  See Mitchell v. State,
931 S.W.2d 950, 950 (Tex. Crim. App. 1996) (plurality).  The lead opinion was
quoted with approval in Vareles.  See Ex parte Varelas, 45 S.W.3d
627, 631 (Tex. Crim. App. 2001).  In reviewing the opinions of the concurring
judges in Mitchell, it does not appear that these judges took issue with
the section of the lead opinion quoted herein.  See Mitchell, 931 S.W.2d
at 954-57 (Clinton, J., concurring; Meyers, J., concurring) (Judge Maloney
joined Judge Meyers’s concurring opinion).





[4]
          The Fort Worth Court held in Allen:

 

            If extraneous offense
or bad acts evidence is before the jury, regardless of whether such evidence
was introduced at the guilt-innocence or punishment phase, article 37.07,
section 3(a) requires that the jurors be instructed not to consider such
extraneous offenses or bad acts in assessing the defendant’s punishment unless
they find the defendant culpable for such offenses or acts under the
statutorily prescribed reasonable-doubt standard.

 

Allen v. State, 47 S.W.3d 47, 50 (Tex. App.—Fort Worth 2001,
pet. ref’d).   

 





[5]
          See Anders v. Cal., 386 U.S. 738, 744, 87 S. Ct. 1396, 1400,18 L. Ed. 2d 493 (1967).

 





[6]
          For reasons unknown, newly
appointed counsel in Carter chose not to raise this “arguable issue” on
resubmission.  See Carter v. State, 2005 Tex. App. LEXIS 6866 at *1 n.1
(Tex. App.—Dallas Aug. 24, 2005, no pet. h.).

 





[7]
          The testimony that Rodgers
sexually assaulted the complainants in the manner alleged in the indictment on
more than one occasion does not constitute evidence of extraneous offenses.  See
Shea v. State, 167 S.W.3d 98, 104 (Tex. App.—Waco 2005, pet. filed).

 





[8]
          Almanza v. State, 686
S.W.2d 157, 171 (Tex. Crim. App. 1985).