# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

September 8, 2009

Charles R. Fulbruge III
Clerk

No. 09-70014

MARTIN ROBLES,

Petitioner-Appellant,

versus

RICK THALER, Director,
Texas Department of Criminal Justice, Correctional Institutions Division,

Respondent-Appellee.

Appeal from the United States District Court
for the Southern District of Texas
No. 2:07-CV-261

Before SMITH, STEWART, and SOUTHWICK, Circuit Judges.

JERRY E. SMITH, Circuit Judge:[*]

Martin Robles seeks a certificate of appealability ("COA") from the denial of his petition for habeas corpus. We deny his application for a COA.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

## I.

Robles and an accomplice entered a dwelling while the occupants were asleep and shot and killed two persons. He was convicted of capital murder and sentenced to death. He appealed to the Texas Court of Criminal Appeals, which denied his direct appeal and his petition for a writ of habeas corpus. Robles filed a federal habeas petition, raising due process, Eighth Amendment, and Free Exercise Clause claims. The district court denied the petition, and he seeks a COA on his due process and Eighth Amendment claims.

## II.

Under the Antiterrorism and Effective Death Penalty Act of 1996, a petitioner must secure a COA as a "jurisdictional prerequisite" to appealing the denial of habeas relief.[1] A COA will be granted only on "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To apply that standard, however, we conduct only a "threshold inquiry" and must issue a COA if "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Miller-El*, 537 U.S. at 338 (citations and internal quotations omitted). "Indeed, a claim can be debatable even though every jurist of reason might agree, after the COA has been granted and the case has received full consideration, that petitioner will not prevail." *Id.*

In death penalty cases, we resolve in the petitioner's favor any doubt about whether a COA should issue. *Pippin v. Dretke*, 434 F.3d 782, 787 (5th Cir. 1992). Nevertheless, "issuance of a COA must not be *pro forma* or a matter of course," and "a prisoner seeking a COA must prove 'something more than the absence of frivolity.'" *Miller-El*, 537 U.S. at 337-38 (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 (1983)). Where the district court denies habeas relief on procedural

---

[1] *Miller-El v. Cockrell*, 537 U.S. 322 (2003); *see also* 28 U.S.C. § 2253(c)(2).

grounds without reaching the underlying constitutional claims, the petitioner is additionally required to show that "jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

## III.

Robles presents three claims of constitutional violation, all of which were rejected by the district court. Each of those claims requires discussion.

## A.

Robles argues that the death penalty in Texas violates the Eighth Amendment's prohibition against cruel and unusual punishment and the Fourteenth Amendment's guarantee of due process. The district court found that those claims were procedurally defaulted because Robles failed to raise them on direct appeal to the Texas Court of Criminal Appeals.

We find it undebatable among jurists of reason that Robles's Eighth and Fourteenth Amendment claims were procedurally defaulted. "When a state court declines to hear a prisoner's federal claims because the prisoner failed to fulfill a state procedural requirement, federal habeas is generally barred if the state procedural rule is independent and adequate to support the judgement." *Sayre v. Anderson*, 238 F.3d 631, 634 (5th Cir. 2001). Where a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless he "can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).

In his federal habeas petition, Robles failed to show cause for his default

and did not claim a fundamental miscarriage of justice. Instead, he now contends that a facial challenge to the Texas death penalty law is structural in nature and can be raised anytime. He cites no authority capable of supporting such an assertion and offers no other argument for why this court should ignore the independent and adequate procedural default. It is undebatable among jurists of reason that the district court was correct in its procedural ruling, and this conclusion is sufficient to deny a COA on the issue.

Even assuming *arguendo* that those constitutional claims have not been defaulted, Robles fails to raise any constitutional issue the resolution of which would be debatable among jurists of reason. "We are bound by Supreme Court precedent which forecloses any argument that the death penalty violates the Constitution under all circumstance[s]." *United States v. Jones*, 132 F.3d 232, 242 (5th Cir. 1998). Robles does not even attempt to show that the Texas death penalty law is unconstitutional as applied to him. Instead, he raises only a facial challenge—arguing that the death penalty *in any form* violates the Eighth and Fourteenth Amendments.

This court, however, "cannot invalidate the statute on the ground that it might conceivably be applied to reach an unconstitutional result in some other defendant's case." *United States v. Robinson*, 367 F.3d 278, 290 (citations omitted). To succeed on a facial challenge on grounds other than the First Amendment, Robles must show that "no set of circumstances exists under which the [challenged statute] would be valid." *United States v. Salerno*, 481 U.S. 739, 745 (1987). Robles makes no such argument, so even if his claims were not defaulted, his categorical arguments based on the Eighth and Fourteenth Amendments fail to raise an issue that is debatable among jurists of reason.

B.

Robles contends that a grammatical error in the jury charge concerning

4

the mitigation special issue violated his constitutional rights, because its phrasing could confuse the jury and render them incapable of giving effect to mitigating evidence. A capital sentencing jury must "be able to consider and give effect to a defendant's mitigating evidence in imposing [a] sentence." *Penry v. Johnson*, 532 U.S. 782, 797 (2001) (internal quotation marks, citations, and brackets omitted). The trial court instructed the jury as follows:

> You shall consider all evidence admitted at the guilt or innocence stage and the punishment stage, including evidence of the defendant's background or character or the circumstances of the offense that militates for or mitigates against the imposition of the death penalty.

Robles argues that the term "mitigates against" is grammatically incorrect and that this usage error created confusion among jurors such that they were not able to give effect to mitigating evidence.

Robles's claim of grammatical error is correct; grammar, however, is not the legal standard. An instruction is not unconstitutionally vague if the challenged term has "some 'common sense core of meaning . . . that criminal juries should be capable of understanding.'" *Tuilaepa v. California*, 512 U.S. 967, 973 (1994) (quoting *Jurek v. Texas*, 428 U.S. 262, 279 (1976)). It takes more than bare grammatical error to render a jury charge constitutionally problematic.

The term "mitigates against" has the common sense core of meaning necessary to pass constitutional muster. First, the term is pervasive in everyday contemporary language. As demonstrated by the government, the pages of popular periodicals and web sites are replete with its usage. Moreover, it has been used repeatedly, without apparent vagueness or confusion, in caselaw. The Supreme Court has employed the phrase freely in a significant number of death penalty cases.[2] Likewise, this court has employed the term without reservation in a

---

[2] *See, e.g., Abdul-Kabir v. Quarterman*, 550 U.S. 233, 251 n.13 (2007); *Delo v. Lashley*,
(continued...)

variety of recent decisions.[3] That prevalence, in both everyday usage and legal precedent, strongly suggests a "common sense core of meaning" that criminal juries can understand and apply.

Even without that widespread use, however, the meaning of the phrase remains manifest when read in the context of the full charge. The words "mitigates against" follow immediately after the words "militates for." The sentence structure suggests a clear contrast and, when read in context, the meaning of the later term is plain. Common sense suggests a meaning opposed to the words preceding the disjunctive, and the jury was not likely to be confused by its usage. The mitigation charge was not unconstitutionally vague, so this issue is not debatable among jurists of reason.

## C.

Robles posits that the mitigation instruction placed an unconstitutional limitation on mitigating evidence. He concedes that the initial jury charge contained the appropriate language required under Texas law, but he argues that the court's failure specifically to refer the jury to both relevant sections of the initial charge when presented with a jury question violated his rights.

One section of the jury charge during the penalty phase instructed that "you shall consider mitigating evidence to be evidence that the jury might regard as reducing a defendant's moral blameworthiness." Robles argues that this instruction unconstitutionally limited the jury's consideration of mitigating evidence to that which relates to moral blameworthiness and therefore precluded

---

[2] (...continued) 507 U.S. 272, 281 (1993); *Franklin v. Lynaugh*, 487 U.S. 164, 170, 183, 184 (1988).

[3] *See, e.g., United States v. Alfaro*, 555 F.3d 496, 500 (5th Cir. 2009); *Smith v. Quarterman*, 515 F.3d 392, 412 (5th Cir. 2008); *United States v. Arias-Robles*, 477 F.3d 245, 249 (2007).

consideration of other relevant mitigating evidence. The full charge, however, specifically instructed the jurors to take into account "all of the evidence, including the circumstances of the offense, the defendant's character and background, and the personal moral culpability of the defendant."

Robles concedes that the full charge was valid but contends that, when the jury requested clarification of the term "mitigating," the court improperly pointed only to the former provision and neglected to direct the jury's attention to the latter. That argument fails to identify any mistake on the part of the trial court, much less a mistake of constitutional significance.

"[J]uries are presumed to follow their instructions." *Richardson v. Marsh*, 481 U.S. 200, 211 (1987). Robles contends that the trial court's narrow response to the jury's request for a definition of mitigating evidence created a risk that the jury would not follow the entire charge. The full charge, however, was properly administered, and a narrow yet fully accurate response to a jury question will not upset the presumption that the jury followed its instructions.

As a response to a specific jury question regarding "mitigation," the direction of the jury to the most relevant provision in the punishment charge was perfectly reasonable and appropriate. Moreover, there was nothing in that provision that in any way contradicted the previous instruction to consider "all of the evidence." It merely contained the most direct guidance on the definition of mitigation and had none of the restrictive implications argued by Robles. Therefore, this claim in the COA application also fails to raise an issue that is debatable among jurists of reason.

The application for a COA is DENIED.